IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EVERETT D. TURNER, | : |
| | : |
| Plaintiff, | : C.A. NO. 05-716(GMS) |
| | : |
| v. | : |
| | : JURY TRIAL DEMANDED |
| WILMINGTON POLICE DEPARTMENT, | : |
| | : |
| Defendant. | : |

## MOTION TO AMEND

Pursuant to Rule 15, Federal Rules Civil Procedure, the Plaintiff moves to amend his complaint to add the City of Wilmington, as a defendant as set forth on Exhibit "A" attached hereto. In the parallel matter of *Boyd v. Wilmington Police Department*, Defendant took the position that the City of Wilmington is a necessary party. Plaintiff's counsel has had an opportunity to discuss this Motion with counsel for Defendant, Wilmington Police Department, and Defendant does not oppose Plaintiff's Motion to Amend the Complaint.

MARGOLIS EDELSTEIN

_____
Jeffrey K. Martin, Esquire (#2407)
Lori Brewington, Esquire (#4522)
1509 Gilpin Avenue
Wilmington, Delaware 19806
(302) 777-4680
(302) 777-4682 Facsimile
Attorneys for Plaintiff

Dated: April 13, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EVERETT D. TURNER, | : | |
| | : | |
| Plaintiff, | : | C.A. NO. 05-716(GMS) |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| WILMINGTON POLICE DEPARTMENT AND CITY OF WILMINGTON | : | |
| | : | |
| Defendant. | : | |

## AMENDED COMPLAINT

### PARTIES

1. Plaintiff, Everett D. Turner (hereinafter "Plaintiff"), has at all times relevant to this Complaint been a resident of New Castle County, State of Delaware and currently resides at 1601 Chestnut Street, Wilmington, DE 19805.

2. Defendant, Wilmington Police Department (hereinafter "Defendant"), is a division of the City of Wilmington Department of Public Safety, a city agency, and at all times relevant to this Complaint, the employer of Plaintiff. The Wilmington Police Department is subject to service through the Director of Public Safety, James N. Mosley, whose address is: James N. Mosley, Director of Public Safety; William T. McLaughlin Public Safety Building, 300 North Walnut Street, Wilmington, DE 19801.

3. Defendant City of Wilmington (hereinafter "Defendant"), is a municipal corporation and body politic under the style and name of "The City of Wilmington," duly organized and existing under the laws of the State of Delaware, whose registered agent for service of process is the City of Wilmington, Louis L. Redding City/County Building, 800 French Street, 9th Floor, Wilmington, Delaware 19801.

## JURISDICTION

3. Jurisdiction is founded on the existence of a question arising under federal statutes. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 704(a) of Title VII of the Civil Rights Act. The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights secured by federal and state law which prohibits discrimination against employees because of their race.

## FACTUAL BACKGROUND

4. Plaintiff was hired as a recruit police officer on or about November 13, 1989. Plaintiff has been employed with the Wilmington Police Department for approximately fifteen (15) years.

5. In the spring of 2001, Lt. Mitch Rock was assigned to the Community Policing Division F Platoon, and became Plaintiff's supervising officer.

6. Lt. Rock assigned Corporal Robert Curry as Plaintiff's partner and they were tasked to work in the 16th District as Weed and Seed officers.

7. As part of the requirements of the Weed and Seed Program, Weed and Seed officers attended community and civic association meetings.

8. When Plaintiff expressed the concerns he heard from Shaniqua Baines., WCCNPAC Program Director, at one of these community meetings, Lt. Rock responded, "F--- Shaniqua Baines and WCCNPAC."

9. Plaintiff was constantly subjected to racial slurs and epithets during roll call. Lt. Rock called Plaintiff such names as "Mother F----- and Blank."

10. Plaintiff spoke to Lt. Rock in private and asked him not to refer to Plaintiff in any manner other than his name and Lt. Rock responded, "Yeah Mother F-----, right."

11. Lt. Rock freely used the word "nigger" during roll call. Lt. Rock knew that this word offended Plaintiff, but continued to use it in Plaintiff's presence.

12. On one occasion, Plaintiff accidentally used Lt. Rock's clipboard. Lt. Rock approached Plaintiff as he was doing his morning paperwork and stated, "Is that my f------ clipboard? You f------ stole my clipboard, give me my f------ clipboard!" Plaintiff responded that there must have been a misunderstanding and he did not realize it was the Rock's clipboard. Lt. Rock snatched the clipboard from Plaintiff, threw Plaintiff's papers on the floor and responded with, "How do you like that Mother f-----, f------ thief?"

13. In December 2003, during roll call, Plaintiff stated that he would not be attending the platoon holiday party because of a prior commitment. Lt. Rock then said to Plaintiff and other Weed and Seed officers, "You guys are F------ up. You two, Curry and Turner are f------ up on and off duty." Plaintiff did not attend the holiday party for fear of an altercation at the party and the safety of his wife.

14. Upon information and belief, Lt. Rock was involved in an altercation at the holiday party.

15. On January 14, 2004, Sgt. Scott Jones came to Plaintiff's residence to inform him he was being transferred to another area.

16. Plaintiff asked Sgt. Jones why he was being transferred, and Sgt. Jones replied, "they want a younger more aggressive officer for your position to make drug arrests and increase the drug stats." Plaintiff then asked, "Who said this, Lt. Rock and Sgt. Staats?" Sgt. Jones, replied "Yes," and further went on to tell Plaintiff that he was being moved under his supervision and would be working in the 11th District area.

17. Plaintiff was assigned to work with Officer Gifford in the 11th District area. Sgt. Jones told Plaintiff that he felt Plaintiff would clash with Officer Gifford. Plaintiff worked with Officer Gifford for approximately two and a half weeks.

18. The officer who replaced Plaintiff in the 16th District area was a much younger female police officer.

19. Plaintiff submitted a Departmental Information form and went out on work-related stress leave.

20. During Plaintiff's leave, he was contacted by Officer Reggie Harvey because Officer Harvey had seen a letter in his own personnel file that had both his name and Plaintiff's name on the envelope. Harvey explained that the letter was from Lt. Rock asking that both Harvey and Turner be moved from the F Platoon because of a lack of performance.

21. Plaintiff's performance was anything but lacking. He received only positive evaluations and statistics.

22. Plaintiff went to see his primary care physician, Dr. Soma Sunderam Padmalingam, in early February. Dr. Padmalingam prescribed several medications for Plaintiff to help him with his work-related stress, anxiety and depression.

23. On February 11, 2004, Sgt. Elliott and Sgt. Barnes went to Plaintiff's residence to inform him that Inspector Wright wanted to question him with regard to the Departmental Information Report he had submitted. Plaintiff informed both men that he would be happy to meet with Inspector Wright, but that he did not want to be interviewed at the police station because of the hostile environment.

24. On February 14, 2004, Plaintiff received a letter from Inspector Wright, stating Plaintiff was reluctant to be interviewed. Plaintiff contacted Inspector Wright by phone to tell

him that he had not refused to be interviewed but that he had requested to be interviewed at his residence.

25. Additionally in February 2004, Captain Magitti and Lieutenant Bruno Battaglia came to Plaintiff's residence to retrieve Plaintiff's weapon and badge. Captain Magitti stated that it was standard procedure for anyone who was off work for a work-related stress reason.

26. On February 17 and 18, 2004, Captain Michael Magitti called Plaintiff several times. Plaintiff asked Magitti to submit a First Report of Injury, but Captain Magitti informed Plaintiff that the claim was not work-related and therefore a First Report of Injury was not needed.

27. Plaintiff then contacted the Wilmington Medical Dispensary for the City of Wilmington to advise them of his situation. Plaintiff also inquired as to the proper procedure for submitting a work-related incident. Plaintiff was informed that a First Report of Injury would need to be submitted in order for there to be an investigation. Plaintiff also learned that in order for the incident to be considered work-related, it would need to be approved by a board consisting of city lawyers, Dr. Senu-Oke (the City Physician) and other Medical Dispensary personnel.

28. On February 23, 2004 Inspector Wright and Sgt. Barnes came to Plaintiff's residence to interview him. They informed Plaintiff that they would be tape-recording the interview.

29. After several requests, Captain Magitti finally submitted the First Report of Injury. Captain Magitti also informed Plaintiff that he would have to request FMLA leave.

30. On March 24, 2004, Plaintiff received notice from the City of Wilmington informing him that his request for FMLA leave was granted and it was effective from January 27, 2004 through April 30, 2004. The letter also stated that if Plaintiff did not return to work

within five working days after the expiration of FMLA leave, he would be subject to departmental charges.

31.   On or about April 2, 2004, Plaintiff went to the Dispensary to submit his Departmental Information form as he was instructed to do. He had also been told that he would be meeting with the aforementioned board to present his case; however, he was advised that he would not be meeting with the board. Plaintiff was told that he should have a decision in a month.

32.   Plaintiff received two letters from the Dispensary stating that they needed fifteen-day extensions to complete their investigation. However, Plaintiff never heard from the Dispensary again.

33.   In early April 2004, Captain Magitti called Plaintiff on several occasions to inform Plaintiff that he was running out of time and that he was going to go into a no-pay status soon. Captain Magitti informed Plaintiff that he needed to come back to work.

34.   After convincing his family doctor that he needed to support his family, Plaintiff contacted Captain Magitti and told him that he was ready to return to work.

35.   On April 12, 2004, Plaintiff filed a charge of discrimination with both the Delaware Department of Labor and the Equal Employment Opportunity Commission ("EEOC") alleging racial discrimination, age discrimination, and retaliation.

36.   On April 14, 2004, Captain Magitti called Plaintiff to tell him that he would need to see psychiatrist, Dr. David Raskin, for a Fitness For Duty evaluation before reporting back to work. Captain Magitti also informed Plaintiff that upon his return he would be assigned to the Patrol Division under Lt. Battaglia.

37.   On April 15, 2004 Plaintiff went to Dr. Raskin's office for the Fitness for Duty evaluation. Dr. Raskin advised Plaintiff that he needed stronger medication.

38. Later in the month of April 2004, Captain Magitti called Plaintiff and forwarded a letter to Plaintiff from Dr. Raskin, stating that Plaintiff was unfit for duty. Magitti suggested that Plaintiff find another Mental Health professional to dispute Dr. Raskin's decision. Plaintiff expressed concern because he felt that Magitti wanted him to find a doctor who would say what Magitti wanted to hear. Magitti denied the allegation.

39. During the month of April, Magitti called Plaintiff on several occasions to inquire how he could afford to go without pay with a family. Plaintiff again expressed his concerns about returning to work. Magitti informed Plaintiff that, "Not everything goes the way we want them to go, and you need to come back to work...."

40. On May 11, 2004, Inspector Wright phoned Plaintiff to inform him that the investigation of Lt. Rock was pending and that he still needed to speak with Chief Szcerba regarding some issues in the investigation.

41. On May 14, 2004, Plaintiff depleted his sick, vacation, and comp time. On May 15, 2004, Plaintiff went on half-pay status through May 28, 2004. From May 29, 2004 to July 9, 2004, Plaintiff was on a no-pay status.

42. On May 27, 2004, Plaintiff spoke to John Manning of the Wilmington Medical Dispensary, to inquire about the status of the investigation. Manning stated that the department had not determined if the situation was work-related.

43. Also on May 27, 2004, Plaintiff spoke with Gary Hutt, Director of Risk Management and Employee Benefits, of the City Personnel and Benefits department. Mr. Hutt stated that he was unaware of Plaintiff's situation but gave Plaintiff some advice and told him that he would look into his matter and return his call. Mr. Hutt never followed up with Plaintiff.

44. Plaintiff filed for worker's compensation benefits with the Industrial Accident Board on May 27, 2004.

45. On June 3, 2004, Plaintiff went to see Dr. Padmalingam because of severe headaches and pains in his left arm. Dr. Padmalingam informed Plaintiff that his blood pressure was high and he was prescribed a higher dose of that medication as well as increases in his depression and anxiety medications. Dr. Padmalingam also wrote a note stating that Plaintiff was unable to function as a police officer at that time. Dr. Padmalingam faxed a copy of the note to Captain Magitti.

46. On July 9, 2004, Plaintiff received back pay and compensation and was placed on worker's compensation.

47. On July 12, 2004 Plaintiff was informed by Inspector Wright that Lt. Rock was charged with rude and insulting language. Plaintiff received a letter dated July 16, 2004 from Captain Nancy Dietz, Commanding Officer of the Office of Professional Standards confirming same.

48. On January 24, 2005 Plaintiff received a letter from Captain Magitti stating that he could not return to work on modified or regular duty until several conditions were met: (1) Plaintiff must begin or resume treatment with a mental health professional; (2) Plaintiff must have the treatment reach a point where Plaintiff's mental health professionals believe that Plaintiff is capable of returning to work; and (3) Plaintiff must successfully complete a Fitness for Duty evaluation. The letter also stated that Plaintiff had been absent from work since January 27, 2004 and that if he did not return to regular duty shortly, that his position would no longer be held for him. Plaintiff was to have his mental health professional contact Dr. Senu-Oke, City Physician, by February 11, 2005.

49. On January 30, 2005, Plaintiff's treating therapist, Jane G. Anderson, LCSW, BCD, sent a letter to Dr. Senu-Oke recommending that Plaintiff not return to work as a Wilmington Police Officer. Dr. Anderson also stressed her concern over the behavior of Lt. Rock. Dr. Anderson confirmed that Plaintiff was still under her care.

50. On February 18, 2005, Plaintiff received a letter stating that Dr. Senu-Oke had notified the Department of Personnel that Plaintiff was unable to return to work to perform fully the duties and responsibilities of his assigned position as a police officer. The letter stated that they could no longer hold Plaintiff's position, and his employment may be terminated pursuant to Wilmington City Code. The letter also set up a Skills Assessment Evaluation for March 8, 2005.

51. Plaintiff received a letter dated June 6, 2005 advising him that Chief of Police, Michael Szcezerba, was placing Plaintiff on the Wilmington Department of Police Retirement List, effective July 1, 2005.

52. On July 11, 2005, Plaintiff received his right to sue letter from the EEOC, dated July 7, 2005.

53. On July 22, 2005 Plaintiff received a letter from Captain Harry W. Downes, Jr. advising Plaintiff that a request had been made to decertify him as a police officer. Plaintiff has not heard anything further on this matter.

## FIRST CAUSE OF ACTION
### (Racial Discrimination)

54. Plaintiff re-alleges and incorporates by reference herein paragraphs 1-53.

55. The practices of Defendants as complained of above, had the effect of depriving Plaintiff of equal employment opportunities and otherwise affected his employment because of his race. The practices employed by Defendants were intentional and were done with malice and/or reckless indifference to the federally-protected rights of Plaintiff.

56. The practices of Defendants as complained of above caused Plaintiff to experience conscious pain and suffering and other emotional harm.

57.     The practices of Defendants as described above are imputable to Defendants in violation of 42 U.S.C. § 2000e-2(a) and 3(a).

58.     As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of employment opportunities, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, great expense, embarrassment and damages to his reputation.

## SECOND CAUSE OF ACTION
### (Age Discrimination)

59.     Plaintiff re-alleges and incorporates by reference herein paragraphs 1 - 58.

60.     Plaintiff's age was a determining factor in Defendants' decision to transfer him.

61.     Defendants' violations of Plaintiff's rights under the ADEA were intentional and therefore done with malice and/or reckless indifference to Plaintiff's federally protected rights and were designed to further injure Plaintiff.

62.     As a result of Defendants' actions in violation of the ADEA, Plaintiff suffered and continues to suffer from emotional distress, other physical and mental maladies, lost employment opportunities, lost wages, and other consequential damages.

## THIRD CAUSE OF ACTION
### (Violation of 19 Del. C. § 711)

63.     Plaintiff re-alleges and incorporates by reference herein paragraphs 1 - 62.

64.     Defendants' aforesaid actions constituted discrimination against Plaintiff on the basis of age in violation of 19 *Del. C.* § 711.

65.     Defendants' violations of Plaintiff's rights under 19 *Del. C.* § 711 were intentional and therefore done with malice and/or reckless indifference to his state-protected rights and were designed to further injure Plaintiff.

66. As a result of Defendants' actions in violation of § 711, Plaintiff suffered and continues to suffer from lost employment opportunities, lost wages, and other consequential damages.

## FOURTH CAUSE OF ACTION
### (Title VII – Retaliation)

67. Plaintiff re-alleges and incorporates by reference herein paragraphs 1-62.

68. This cause of action arises under Title VII, 42 U.S.C. § 2000e(2)(a).

69. Defendants intentionally and maliciously discriminated against Plaintiff in retaliation for his complaints in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(2)(a) when it:

   (a) denied Plaintiff promotions and transfer requests despite his qualifications;

   (b) forced Plaintiff to work in a hostile work environment;

   (c) refused to reinstate Plaintiff to his position

70. Defendants acted with discriminatory motive and the reasons provided by Defendant for failing to promote and/or transfer Plaintiff are pretextual.

71. As a result of Defendants' unlawful retaliation against Plaintiff, Plaintiff suffered a loss of considerable pay: past, present, and future and prospective and has suffered humiliation, mental anguish and emotional pain.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment against the Defendants, Wilmington Police Department and the City of Wilmington, and in his favor for damages suffered by Plaintiff as a result of Defendants' actions, including, but not limited to emotional distress, front pay, benefits (both retroactively and prospectively), rank advancement, compensatory damages, punitive damages, attorney's fees, the cost of this litigation, pre- and

post-judgment interest and such other further relief as this Honorable Court deems just and proper.

                    MARGOLIS EDELSTEIN

                    Jeffrey K. Martin, Esquire (#2407)
                    Lori A. Brewington (#4522)
                    1509 Gilpin Avenue
                    Wilmington, Delaware 19806
                    (302) 777-4680
                    (302) 777-4682 Facsimile
                    Attorneys for Plaintiff

Dated: April 13, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EVERETT D. TURNER, | : |
| | : |
| Plaintiff, | : C.A. NO. 05-716(GMS) |
| | : |
| v. | : |
| | : JURY TRIAL DEMANDED |
| WILMINGTON POLICE DEPARTMENT, | : |
| | : |
| Defendant. | : |

### NOTICE OF SERVICE

I, Jeffrey K. Martin, do hereby certify that on April 13, 2006, I have mailed two copies of the Motion to Amend to the following individuals:

Alex J. Mili, Jr., Esquire
Assistant City Solicitor
800 N. French Street, 9th Floor
Wilmington, DE 19801


MARGOLIS EDELSTEIN

Jeffrey K. Martin, Esquire (#2407)
Lori A. Brewington, Esquire (#4522)
1509 Gilpin Avenue
Wilmington, Delaware 19806
(302) 777-4680
(302) 777-4682 Facsimile
Attorneys for Plaintiff

Dated: April 13, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EVERETT D. TURNER, | : |
| | : |
| Plaintiff, | : C.A. NO. 05-716(GMS) |
| | : |
| v. | : |
| | : JURY TRIAL DEMANDED |
| WILMINGTON POLICE DEPARTMENT AND CITY OF WILMINGTON | : |
| | : |
| Defendant. | : |

### ORDER

The Court having heard and considered arguments on this _____ day of _____,

IT IS HEREBY ORDERED that Plaintiff's Motion to Amend shall be granted.

_____
J