## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

EVERETT D. TURNER,                      :
                                        :
              Plaintiff,                :
                                        :
                                        :    C.A. No.  05-716 (GMS)
v.                                      :    TRIAL BY JURY DEMANDED
                                        :
CITY OF WILMINGTON,                     :
                                        :
              Defendant.                :


## APPENDIX TO PLANITIFF'S ANSWERING BRIEF
## IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT


**Jeffrey K. Martin, Esquire (#2407)**
**MARGOLIS EDELSTEIN**
**1509 Gilpin Avenue**
**Wilmington, DE  19806**
**(302) 777-4680**
**Attorneys for Plaintiff**


**DATED:  September 18, 2006**

# TABLE OF CONTENTS

                                                                    **TAB**

Affidavit of Everett D. Turner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    A

Affidavit of Eric M. Green . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    B

Affidavit of William P. Babby, III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    C

Affidavit of Kenneth A. Boyd . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    D

Affidavit of Reginald L. Harvey . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    E

Plaintiff's 2003 Performance Evaluation    . . . . . . . . . . . . . . . . . . . . .    F

Defendant's Rule 26 Initial Disclosures . . . . . . . . . . . . . . . . . . . . . . . . . .    G

Letter From Senior Assistant City Solicitor to Plaintiff's Counsel
August 24, 2006 Accompanying Defendant's Document Production . . . .    H

Everett D. Turner's January 26, 2004 Complaint to Chief Szczerba . . . . .    I

Lt. Rock's January 22, 2004 Memorandum to Chief Szczerba
Regarding Personnel Transfers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    J

Letter From Dr. David Raskin to Captain Maggitti Regarding
Everett D. Turner Dated April 21, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . .    K

Petition To Determine Compensation Due (Worker's Compensation
Benefits) Filed by Everett D. Turner on May 27, 2004 . . . . . . . . . . . . . . .    L

Memo From Master Sergeant Barnes to Inspector Wright
Dated June 24, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    M

Agreement As To Compensation (Worker's Compensation Benefits)
Dated June 28, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    N

Departmental Information Regarding Internal Investigation/Everett
Turner Dated June 29, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    O

Summary Punishment Offer For Lt. Rock Dated July 8, 2004 . . . . . . . . .    P

Letter From Captain Nancy Dietz to Cpl. Turner Dated July 16, 2004
Regarding Internal Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    Q

Affidavit of Lt. Mitchell Rock Dated August 17, 2004 . . . . . . . . . . . . . . .    R

Letter From Jane Anderson, LCSW to Captain Maggitti Dated
January 30, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    S

Letter to Cpl. Turner From Chief Szczerba Dated June 6, 2005
Regarding Retirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    T

Letter to Everett D. Turner From Pamela White, City Risk Management
Analyst Regarding Confirmation of Total Disability . . . . . . . . . . . . . . . .    U

**A**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **EVERETT D. TURNER,** | : | |
| | : | |
| **Plaintiff,** | : | **C.A. NO. 05-716 (GMS)** |
| | : | |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **CITY OF WILMINGTON ,** | : | |
| | : | |
| **Defendant.** | : | |

### AFFIDAVIT OF EVERETT D. TURNER

STATE OF DELAWARE  )
                         ) SS.
NEW CASTLE COUNTY  )

I, EVERETT D. TURNER, being duly sworn according to law, depose and state that the information contained herein is based on my own personal knowledge and is true and correct:

1. I served as a Wilmington Police Officer from 1989 to 2005.

2. I worked under the direction of Lt. Mitchell Rock who served as the Operations Supervisor of F Platoon from April 2001 through January 2004.

3. During my time in F Platoon (except when Lt. Rock attended the FBI Academy during the summer of 2003), I had very frequent contact with Lt. Rock, often seeing him eight to ten times per week.

4. I was constantly subjected to rude, humiliating, embarrassing and racial comments by Lt. Rock.

4. Lt. Rock did not refer to me by my name but rather continually called me "motherfucker" and/or "blank".

5. I understand the word "blank" to mean the "n" word. This word was introduced to the Wilmington Police Department by a black Wilmington Police Officer, Eric Green, and the term is well known throughout the Wilmington Police Department.

6. During the last three months of my service (November 2003 to January 2004), I approached Lt. Rock on three specific occasions asking him not to use this language toward me. Prior to November 2003, I had asked him several times not to use this language towards me. In November 2003, I had two meetings with Lt. Rock in the Patrol Sergeant's office. During the second meeting, Officer Curry was there. In both instances, Lt. Rock's response was, "yeah, motherfucker, right." He arrogantly walked away on both occasions after this response. In December, I approached Lt. Rock in the first floor hallway next to the snack machine. Lt. Rock had the same response to my request to desist.

7. During one instance at roll call, Lt. Rock loosely used the "n" word and at the same time looked directly at me.

8. During another roll call in January 2004, I greeted Lt. Rock by saying, "How are you today, Lt. Rock?" Lt. Rock's reply was "Everett, shut the fuck up and sit the fuck down." This was witnessed by Officers Lynch and Curry.

9. There was another incident at roll call involving Lt. Rock that other officers witnessed. Lt. Rock grabbed a clipboard from my hands and threw it down to the floor, scattering my papers in front of everyone in the roll call room. Lt. Rock then said, "How do you like that motherfucker, fucking thief!" I felt physically threatened by Rock's behavior and felt very humiliated as I was openly accused of stealing in front of my colleagues as I collected my scattered papers from the floor.

10.    During the month of December 2003, Lt. Rock asked whether we would be attending the platoon holiday party to be held at Harry's Savoy Grill. I told him I would not attend. Officer Curry also declined to attend. We both did not want to subject our wives to Rock's unprofessional behavior. Lt. Rock's response was that "you two, Curry and Turner, are fucking up on and off duty."

11.    On January 14, 2004, while out on a sick day, Sgt. Scott Jones responded to my residence to inform me that I was being moved to another area. Sgt. Jones explained that they wanted a younger, more aggressive officer for that position to make drug arrests and to increase the drug stats.

12.    It is my belief that Lt. Mitchell Rock is a racist and his blatant and degrading disrespect for me creating a hostile work environment caused me so much anxiety that I left the police force on a stress leave beginning January 26, 2004.

13.    During the first month of my sick leave, I was advised by Officer Reginald Harvey that the two of us, both African Americans, were being transferred out of F Platoon at the initiation and request of Lt. Rock. I was very upset to learn of my pending transfer from F Platoon because I spent seven years in community policing and I excelled in this work that I loved to do. Given that there were no issues regarding my work performance, I believe that this transfer was in response to my complaint to my superiors regarding the hostile work environment in F Platoon.

14.    I have reviewed the Affidavit of Robert Curry found at A-78, 79. I disagree with Curry's statements in paragraph 5 of his affidavit suggesting that I had abandoned a scene. To the contrary, Officer Curry had advised me to go to 9th and Monroe Street where I did, following which time I observed Officer Baylor with three

subjects stopped and responded to his location for assistance with the apprehension of these subjects.

15.    I have reviewed the Affidavit of Officer Michael Gifford found at A-80, 81. I disagree with Mr. Gifford's assertion in paragraph 7 of his affidavit that I did not properly complete my job responsibilities. Contrary to Gifford's sworn statement that he confronted me about a problem the next day, I was never confronted because there was nothing to be confronted about.

16.    I have reviewed the Complaint filed on my behalf by my counsel. All of the statements are true and correct with the exception of clarification of paragraph 11 to include only one instance of the use of the "n" word at roll call and the elimination of subparagraph (a) under paragraph 69 because I was not denied any promotions or denied any transfer requests. All of my responses contained on pages A-118 through A-153 representing my responses to interview questions with Inspector Wright and Master Sergeant Barnes are true and correct to the best of my knowledge and belief.


_Everett D. Turner_
EVERETT D. TURNER


SWORN TO AND SUBSCRIBED before me this 18th day of September 2006.


Notary Public


JEFFREY K. MARTIN, ESQ.
NOTARY PUBLIC
DELAWARE ATTORNEY
ID #2407
DELAWARE ATTORNEY AT LAW

4

**B**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

EVERETT D. TURNER,                :
                                  :
        Plaintiff,                :        C.A. NO. 05-716 (GMS)
                                  :
        v.                        :
                                  :        **JURY TRIAL DEMANDED**
CITY OF WILMINGTON,               :
                                  :
        Defendant.                :

### AFFIDAVIT OF ERIC M. GREEN

STATE OF DELAWARE    )
                     ) SS.
NEW CASTLE COUNTY    )

I, ERIC M. GREEN, being duly sworn according to law, depose and state that the information contained herein is based on my own personal knowledge and is true and correct:

1.      I have been employed by the Wilmington Police Department since January 1980. I have been out on medical leave since August 12, 2005.

2.      Approximately six or seven years ago, I first used the term "blank" in the Wilmington Police Department as a means of substituting for the "n" word. This is not a racially neutral word and never has been.

3.      I have heard this term "blank" be used throughout the Wilmington Police Department.

_____

ERIC M. GREEN

SWORN TO AND SUBSCRIBED before me this _16_ day of September 2006.

_____

Notary Public

*LORI A. BREWINGTON*
*NOTARIAL OFFICER*
*STATE OF*
*DELAWARE*
*29 DEL. C. § 4323(a)(3)*

**C**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EVERETT D. TURNER, | : | |
| | : | |
| **Plaintiff,** | : | **C.A. NO. 05-716 (GMS)** |
| | : | |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| **CIITY OF WILMINGTON,** | : | |
| | : | |
| **Defendant.** | : | |

## AFFIDAVIT OF WILLIAM P. BABBY, III

STATE OF DELAWARE      )
                                              ) SS.
NEW CASTLE COUNTY    )

I, WILLIAM P. BABBY, III, being duly sworn according to law, depose and state that the information contained herein is based on my own personal knowledge and is true and correct:

1.      I have served as a Wilmington Police Officer from 1989 to the present.

2.      I served under Lt. Mitchell Rock in F Platoon from June 2001 through November 2001. During that time, Officer Everett Turner was assigned to F Platoon.

3.      On numerous occasions, I heard Lt. Rock refer to Officer Turner as "fucking blank". Alternatively, Rock referred to Turner as "dumbass."

4.      In all of my observations between Lt. Rock and Officer Turner, Rock was always demeaning towards Turner.

5.      The term "blank" was introduced to the Wilmington Police Department by Officer Eric Green. Green used the word "blank" to substitute for the "n" word when black officers referred to one another.

6.      There is no question in my mind that Lt Rock knew that the work "blank" meant the "n" word.

7.      In my observations of Lt. Rock's interactions with others, it is clear to me that Rock favors whites over blacks.

8.      I am the plaintiff in a federal lawsuit captioned *Babby v. City of Wilmington*, C.A. No. 06-552 (JJF).  I have sued the City of Wilmington alleging discriminatory treatment on the basis of retaliation, a Title VII cause of action.

_____
WILLIAM P. BABBY, III

SWORN TO AND SUBSCRIBED before me this _18_ day of September 2006.



_____
Notary Public

**D**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **EVERETT D. TURNER,** | : | |
| | : | |
| **Plaintiff,** | : | **C.A. NO. 05-716 (GMS)** |
| | : | |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **CIITY OF WILMINGTON,** | : | |
| | : | |
| **Defendant.** | : | |

## AFFIDAVIT OF KENNETH A. BOYD

STATE OF DELAWARE     )
                                          ) SS.
NEW CASTLE COUNTY    )

I, KENNETH A. BOYD, being duly sworn according to law, depose and state that the information contained herein is based on my own personal knowledge and is true and correct:

1.     I have been employed as a City of Wilmington Police Officer since 1986.

2.     I am familiar with the term "blank" that has been used in the Wilmington Police Department.

3.     To the best of my knowledge, this term was introduced by Officer Eric Green as a substitute for the "n" word.

4.     I have known Lt. Mitchell Rock for my entire career as a Wilmington Police Officer.  Mitchell Rock and I graduated together from the police academy.

5.     It has been my observation that as Mitchell Rock has risen in rank through the Wilmington Police Department, he has become more and more demeaning towards minorities and African Americans, in particular.

6.     My wife and I were invited to the home of Mitchell Rock for a Christmas party in the early 1990's.  Mark Foreman, an African American rookie police officer, also attended.  I vividly recall Rock telling Foreman to "shut up" and to "speak only when I tell you to talk."  My wife and I were very offended at Rock's demeaning and arrogant remark.

7.     I am the plaintiff in a federal lawsuit captioned *Boyd v. City of Wilmington,* C.A. No. 05-178 (KAJ) against the City of Wilmington and the Wilmington Police Department alleging racial discrimination because I was passed over for promotion to sergeant.

8.     After being passed over for sergeant, Lt. Rock counseled me not to worry because I am in the detective division and I should ride out my twenty years with the detectives.  I was very insulted by Rock's remark suggesting that I should not continue my quest for supervision within the Wilmington Police Department.


KENNETH A. BOYD


SWORN TO AND SUBSCRIBED before me this ⎟8th day of September 2006.


Notary Public

> JEFFREY K. MARTIN, ESQ.
> NOTARY PUBLIC
> DELAWARE ATTORNEY
> ID #2407
> DELAWARE ATTORNEY AT LAW

E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **EVERETT D. TURNER,** | : | |
| | : | |
| **Plaintiff,** | : | **C.A. NO. 05-716(GMS)** |
| | : | |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **CIITY OF WILMINGTON** | : | |
| | : | |
| **Defendant.** | : | |

## AFFIDAVIT OF REGINALD L. HARVEY

STATE OF DELAWARE    )
                                          ) SS.
NEW CASTLE COUNTY    )

I, REGINALD L. HARVEY, being duly sworn according to law, depose and state that the information contained herein is based on my own personal knowledge and is true and correct:

1.    I served as a City of Wilmington Police Officer from February 1998 to September 2005.

2.    I retired on a medical pension as a result of anxiety attacks and stress during my time serving in F Platoon.

3.    I served in F Platoon from April 2003 through the beginning of November 2003, when I began working as a detective, until the first week of March 2004. At that time I returned to F Platoon until April 2004.

4.    Officer Michael Gifford was my partner in F Platoon. I had a great deal of difficulty dealing with Officer Gifford because I found that he filed false police reports and was otherwise untrustworthy. In addition, Officer Gifford was overly aggressive physically towards members of the community.

5.    I was transferred from F Platoon in April 2004 pursuant to the January 22, 2004 memorandum from Lt. Rock to Chief Szczerba. This is the memorandum found in Defendant's Appendix as A-56.

6.    I am aware that Lt. Rock verbally berated many of the officers including some officers in F Platoon.

7.    Lt. Rock often used the term "blank" directed to individuals in F Platoon. Lt. Rock used this term specifically toward me as well as toward Officer Everett Turner.

8.    The term "blank" was a term introduced to the Wilmington Police Department by Officer Eric Green. It is a word that is used in order to make an insult and is often used as a substitute for the "n" word.

9.    I believe that Lt. Rock is a racist and treats black officers differently from white officers if the black officers do not want to become a member of his team.

10.    I attended the F Platoon Christmas party at Harry's Savoy Grill in December 2003. During that time I witnessed Lt. Rock have a verbal altercation with Officer Crawford. Officer Rentz came to the table and separated Lt. Rock and Officer Crawford. Lt. Rock also insulted me asking whether I wanted to do patrol work on Christmas Eve beginning at 11 p.m. I am aware that Lt. Rock and Officer Crawford had a verbal altercation at Scratch Magoo's later that evening.

REGINALD L. HARVEY

SWORN TO AND SUBSCRIBED before me this 15th day of September 2006.

Notary Public

JEFFREY K. MARTIN, ESQ.
NOTARY PUBLIC
DELAWARE ATTORNEY
ID #2407
DELAWARE ATTORNEY AT LAW

**F**

# CITY OF WILMINGTON
## PUBLIC SAFETY DEPARTMENT
### EMPLOYMENT PERFORMANCE EVALUATION

RECEIVED

### PART I
(Read instruction manual prior to completing this form)

MAR 2 8 2003

PERSONNEL DEPARTMENT

**EMPLOYEE NAME**: Turner, Everett                    **RANK**:  Corporal

**CITY DEPARTMENT**:   POLICE                    **SOC SECURITY NUMBER**: 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

**EVALUATION PERIOD**:     11/01 to 11/02                    **DATE OF REVIEW**: 3-21-03

### PART II - Job Performance

NOTE: In this section, assign each task a percentage based on the priority of the task.  These percentages should total 100%.
Each task should then be assigned a numerical performance rating based on the following scale:

(Superior-5)    (Above Average-4)    (Average-3)    (Needs Improvement-2)    (Unsatisfactory-1)

| JOB TASK AND RESPONSIBILITIES | COMMENTS |
|---|---|
| 1.  Conducts preliminary investigations. Interviews victims, suspects, and witnesses; locates evidence, and completes the appropriate reports (arrests, A.O.'s, Crime, etc.) neatly and promptly. | Does a thorough job.<br><br>Percentage - 10%                    Rating: 4 |
| 2.  Investigates & identifies violations of the motor vehicle laws pertaining to traffic accidents and self-initiated motor vehicle stops. | Could be more active in this area, however when active he does a good job.<br>Percentage - 10%                    Rating: 3 |
| 3.  Conducts preventive patrol techniques that deter crime including building checks, pedestrian stops, and special attention compliance.  Collects intelligence information to disseminate throughout the department. Performs self initiated activities. | Is very active in this area. Is committed to the community he serves<br><br>Percentage - 30%                    Rating: 5 |
| 4.  Completes administrative paperwork such as car sheets, subpoenas, memo distribution form, etc., completely, neatly, and promptly. | Percentage - 10%                    Rating: 5 |
| 5.  Identifies problems on district, and develops ideas to solve them.  Works with members of the community and the department to assist in this endeavor. | Is very active with the community groups in his assigned area. Is always willing to help solve problems.<br><br>Percentage - 40%                    Rating: 5 |

# PART III

## RELIABILITY AND ATTITUDE
(Answer all questions in this section)

| | |
|---|---|
| **1. Employee's Attendance**<br><br>What best describes employee:<br><br>☒ Completely dependable, never absent<br>☐ Dependable, absent occasionally<br>☐ Absent frequently<br>☐ Undependable | **5. Initiative**<br><br>What best describes employee:<br><br>☒ Always finds work to do; never needs to be told<br>☐ Needs to be "pushed" only on rare occasions<br>☐ Needs normal supervision<br>☐ Needs considerable supervision |
| **2. Employee's Punctuality**<br><br>What best describes employee:<br><br>☒ Always on time<br>☐ Occasionally late<br>☐ In need of occasional reminders<br>☐ Often late | **6. Judgment**<br><br>What best describes employees:<br><br>☒ Outstanding ability to make sound & logical decisions<br>☐ Decisions are generally acceptable<br>☐ Inclined to be impulsive or takes too much time to express opinion<br>☐ Shows poor judgment |
| **3. If late or absence occurs**<br><br>Does employee:<br><br>☒ Always notify supervisor when late or absent<br>☐ Usually notify supervisor when late or absent<br>☐ Usually forget to notify supervisor when late/absent<br>☐ Never notify supervisor when late or absent | **7. Adaptability**<br><br>What best describes employee:<br><br>☒ Is able to express himself and effectively deals with different situations and circumstances<br>☐ Can normally adapt to a situation<br>☐ Has difficulty adapting to a situation<br>☐ Completely inflexible |
| **4. Cooperation**<br><br>What best describes employee:<br><br>X Will express concerns, however, does promote cooperation in dealings with supervisors, co-workers, & the public<br>☐ Normally congenial and cooperative<br>☐ Does not seem interested in developing good working relations w/supervisors, co-workers & the public<br>☐ Often surly and uncooperative | **8. Performance/Accuracy**<br><br>What best describes employee:<br><br>☒ Rarely in need of correction - work of high quality<br>☐ Work has to be corrected<br>☐ Errors occur with some regularity<br>☐ Work is of haphazard & careless quality |

P 0009

## PART III
(continued)

| 9.   Communications | 13.   Job Knowledge |
|---|---|
| What best describes employee:<br><br>☒ Communicates well; clear and persuasive<br>☐ Communicates fairly well; generally accomplishes objective<br>☐ Communicates only at a minimum accepted level; sometimes misunderstood; misses point<br>☐ Ambiguous; too lengthy or too brief; often misunderstood | What best describes employee:<br><br>☒ Has thorough knowledge of nearly all requirements of job<br>☐ More than sufficient knowledge for performance of job<br>☐ Fair grasp of basic requirements<br>☐ Possesses little required knowledge of job |
| 10.   Quantity | 14.   Creativity |
| What best describes employee:<br><br>☐ Usually high output - meets emergency demands well<br>☒ Consistently turns out more than average<br>☐ Finishes allotted amount<br>☐ Does not carry fair share | What best describes employee:<br><br>☒ Thinks constructively; contributes practical and innovative suggestions<br>☐ Shows some originality and able to expand upon ideas of others<br>☐ Rarely contributes original ideas<br>☐ Inhibits the creative process in the workplace |
| 11.   Completing Assignments | 15.   Deportment |
| What best describes employee:<br><br>☒ Always completes assignments on time<br>☐ Occasionally late completing an assignment<br>☐ Completes tasks, but frequently behind schedule<br>☐ Tasks are generally incomplete & behind schedule | What best describes employee:<br><br>☒ Is self-assured, stable and able to work effectively under pressure<br>☐ Can be counted on in most situations to conduct one's self well while under pressure<br>☐ Occasionally has difficulty working under pressure<br>☐ Cannot be relied upon while under pressure |
| 12.   Pride | 16.   Neatness |
| What best describes employee:<br><br>☒ Always takes pride in work product<br>☐ Usually conscientious<br>☐ Appears willing to sacrifice<br>☐ Apparently lacks sense of pride in work | What best describes employee:<br><br>☒ Always maintains a neat appearance and is well groomed<br>☐ Usually is well groomed<br>☐ Seldom is well groomed<br>☐ Never is well groomed |

## PART IV - COMMENTS

**EVALUATOR'S COMMENTS**: (i.e., strong points, weak points.  If the employee is a Supervisor, assess the employee's supervisory skills)

It should be noted that this evaluation is for the period between 10/02 and 11/02, as this period represents the time period Turner was supervised by this evaluator.

Corporal Turner is a very committed and responsible person. Corporal Turner routinely demonstrates a high degree of community policing skills and is very active in responding to the community's needs. Corporal Turner aggressively deals with nuisance type complaints. During this evaluation period Corporal Turner was awarded the "Keys to Success" for his involvement in the "Jump Out" program.

Corporal Turner could increase his involvement in Title 16 enforcement in his area, both directly and indirectly.

**EMPLOYEE'S COMMENTS**:

In reference to title 16 enforcement this officer feels that I have address numerous community drug complaints in the 16th district area in the past and present. This officer attends every monthly community civic association meetings and many times forwards information from community members to the vice squad or other patrol officers. This officer has received numerous awards for addressing drugs and nuisance complaints in the 16th district area.

**ADDITIONAL EVALUATOR'S COMMENTS**:

EMPLOYEE'S SIGNATURE: _Everett D. Turner_    DATE: _3-21-03_

EVALUATOR'S SIGNATURE/TITLE: _Sgt_    DATE: _3-21-03_

EVALUATOR'S SOCIAL SECURITY NUMBER:  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

DEPARTMENT HEAD'S SIGNATURE: _Insp_    DATE: _3/25/03_

Employee's signature only signifies that discussion and review was held with employee and that employee has read the above.

Capt May                    Lt. MP
                            3/24/03

**G**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

EVERETT D. TURNER,                         :
                                           :
            Plaintiff,                      :
                                           :        C.A. No. 05-716
v.                                          :        TRIAL BY JURY DEMANDED
                                           :
WILMINGTON POLICE DEPARTMENT, :
                                           :
            Defendant.                      :

RECEIVED
FEB 2 4 2006
BY:

**DEFENDANT WILMINGTON POLICE DEPARTMENT'S DISCLOSURE
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26**

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Defendants Wilmington Police

Department submits these initial disclosures based on information reasonably available at the time

of submission. Defendants reserve the right to supplement these disclosures and the right to object

to any disclosures based on appropriate grounds.

1.      **Names of individuals likely to have discoverable information:**

        (a)     The parties.        See pleadings.

        (b)     Michael Sczcerba    300 North Walnut Street, Wilmington, DE 19801

        (c)     Mitchell Rock       300 North Walnut Street, Wilmington, DE 19801

        (d)     Corey Staats        300 North Walnut Street, Wilmington, DE 19801

        (e)     James Wright        500 N. King Street, Wilmington, DE 19801

        (f)     Kurtis Crawford     300 North Walnut Street, Wilmington, DE 19801

        (g)     Mitchell Rentz      300 North Walnut Street, Wilmington, DE 19801

        (h)     Eric Green          300 North Walnut Street, Wilmington, DE 19801

        (i)     Fray Lynch          300 North Walnut Street, Wilmington, DE 19801

        (j)     Steven Barnes       300 North Walnut Street, Wilmington, DE 19801

| (k) | Scott Jones | 300 North Walnut Street, Wilmington, DE 19801 |
| (l) | Alvin Boardley | 300 North Walnut Street, Wilmington, DE 19801 |
| (m) | Michael Maggitti | 300 North Walnut Street, Wilmington, DE 19801 |
| (n) | Robert Curry | 300 North Walnut Street, Wilmington, DE 19801 |
| (o) | Michael Gifford | 300 North Walnut Street, Wilmington, DE 19801 |
| (p) | Elinza Cain | 800 North French Street, Wilmington, DE 19801 |
| (q) | Dr. David Raskin | Mental Health Sys., Inc. 19C Trolley Square, Wilm. DE 19806 |
| (r) | Dr. Jane Anderson | Delaware Family Ctr., 3608 Lancaster Pike, Wilm., DE 19805 |

2.    **Documents:**

(a)    Personnel files of the Wilmington Police Department Human Resources Division.

(b)    Files related to Plaintiff's EEOC claim in the possession of undersigned counsel.

(c)    Files related to Plaintiff's Workers Compensation case, which are in the possession of undersigned counsel and/or the City Medical Dispensary.

(d)    Internal affairs files of the Office of Professional Standards, for which confidentiality is mandated by the Law Enforcement Officers Bill of Rights, 11 Del.C. § 9200 et seq.

(e)    Plaintiff's patient file that is in the possession of Dr. David Raskin.

(f)    Plaintiff's patient file that is in the possession of Dr. Jane Anderson.

3.    **Identification of Experts:**

Dr. David Raskin, Mental Health System, Inc. 19C Trolley Square, Wilmington, DE 19806

2

**4.    Insurance Coverage:**

The City is self-insured.

**CITY OF WILMINGTON LAW DEPARTMENT**

/s/ Alex J. Mili, Jr., Esquire
Alex J. Mili, Jr., Esquire (DE Bar Id. No. 4125)
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175

Dated: February 22, 2006                Attorney for Defendant Wilmington Police Department

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KENNETH A. BOYD,                          :
                                          :
            Plaintiff,                    :
                                          :      C.A. No.  05-178 KAJ
v.                                        :      TRIAL BY JURY DEMANDED
                                          :
WILMINGTON POLICE DEPARTMENT,             :
                                          :
            Defendants.                   :

### CERTIFICATE OF SERVICE

I, Alex J. Mili, Jr., Esquire,  hereby certify that on the 22nd day of February, 2006  two (2)

copies of the Wilmington Police Department's Disclosure Pursuant to Federal Rule of Civil

Procedure 26 were served on the Clerk of Court using CM/ECF, which will send notification of such

filing(s) to the following and a copy of said filing was served by U.S. Mail, postage pre-paid, to the

following individual:

> Jeffrey K. Martin, Esquire
> Margolis Edelstein
> 1509 Gilpin Avenue
> Wilmington, DE 19806

### CITY OF WILMINGTON LAW DEPARTMENT

/s/ Alex J. Mili, Jr., Esquire
Alex J. Mili, Jr., Esquire (DE Bar Id. No. 4125)
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175
Attorney for Defendant Wilmington Police Department

**H**



# City of Wilmington
## Delaware

JAMES M. BAKER
MAYOR

LOUIS L. REDDING - CITY / COUNTY BUILDING
800 FRENCH STREET
WILMINGTON, DELAWARE
19801 - 3537

**Law Department**
**(302) 576-2175**

August 24, 2006

RECEIVED
AUG 2 5
BY:

<u>Hand Delivery</u>
Jeffrey K. Martin, Esquire
Margolis Edelstein
1509 Gilpin Avenue
Wilmington, DE 19801

> **Re:    Turner v. Wilmington Police Department**
> **C.A. No. 05-716**

Dear Jeff:

Per your request, enclosed are the documents that were identified in Defendant's Rule 26 disclosures. I remind you that the internal affairs files are confidential, pursuant to the Law Enforcement Officer's Bill of Rights, 11 <u>Del. C.</u> §9200 et seq. The City is prepared to take legal action for any improper disclosure of these internal affairs files to any third parties or media outlets. I am still awaiting security clearance for a copy of Mr. Turner's personnel file, which I will forward to you immediately upon my receipt.

Should you have any questions, please feel free to call.

Very truly yours,

Alex J. Mili, Jr.
Senior Assistant City Solicitor

Enclosures

OFFICE OF PUBLIC SAFETY

WILMINGTON POLICE DEPARTMENT

WILMINGTON, DE


TO:    Michael Szczerba
       Chief of Police

From: Corporal Everett D. Turner

Date: January 26, 2004                                    000148

RE:    Conduct & Discrimination


Sir,

It is with much grief and dismay that I submit this departmental information form
in regard to the subjects referenced above. At this point, I feel I have no other
recourse but to express my total disgust with past and present events that have
taken place on F Platoon operating under the supervision of Lt. Mitch Rock of the
City of Wilmington Police Department.

    The following are events that took place during the months of November
    2003 through January 2004:

- During role call while other officers were present, I was constantly subjected
  to rude, humiliating, embarrassing, and racial comments by Lt. Mitch Rock.
  Such as; directly being called derogatory names like, Mother Fucker, and
  Blank. Please note that this is a blatant sign of disrespect to any human
  being and that these comments were said with all sincerity.

- During one instance at role call while other officers were present, Lt. Mitch
  Rock loosely used the word NIGGER. Again, I was subjected to this highly
  offensive choice of words. Even though this was not directed to me, the
  manner in which he freely used this word was extremely offensive.

- On another occasion during role call in the month of January 2004, I greeted
  Lt. Mitch Rock by saying, " How are you today Lt. Rock " and his reply was
  "Everett, Shut the Fuck Up and Sit The Fuck Down".

- On yet another occasion during the months of November 2003 through
  January 2004 at role call there was a misunderstanding about a clipboard

that was given to me by my partner. Apparently, my partner had taken the lieutenants clipboard by mistake but unbeknown to me. Lt. Mitch Rock observed me with the clipboard while I was doing paperwork. Lt. Mitch Rock then looked at me and said, "Is that my Fucking clipboard, you Fucking stole my clipboard", "Give me my Fucking clipboard". I then handed him the clipboard and told him that I was unaware that my partner had given me the lieutenants clip board and apologized. At this time, Lt. Mitch Rock snatched the clipboard from my hands and threw my papers on the floor in front of everyone in the role call room. Lt. Mitch Rock then proceeded to say, "How do you like that Mother Fucker, Fucking Thief"? Of course this offended me tremendously, as it would any human being.

- In the month of December 2003 during role call, the platoon was asked whether we would be attending the platoon holiday party being held at Harry Savoy's restaurant located at the Christina Riverfront in Wilmington, DE. When Lt. Mitch Rock came in to address role call, he said to me and the three other Weed & Seed officers, "You guys are Fucking Up". Lt. Mitch Rock then proceeded to address, me and Corporal Robert Curry directly by stating that, "You Two, Curry and Turner are Fucking up On and Off Duty". This comment was directed to Corporal Curry and me after we advised him that we would not be attending the holiday party due to previous commitments. The reason why I did not wish to attend the holiday party was because I did not wish for me and my wife to be subjected to the humiliating comments from Lt. Mitch Rock. Apparently, I made the right decision to not go because I later found out that an altercation occurred at the restaurant between Lt. Mitch Rock and two other Weed & Seed officers who attended the party.

- While serving the community in the West Center City, 16th District Area, I have worked diligently to build a rapport and partnership between the community members and the police department. I have received numerous awards and resolutions regarding my efforts in the communities. However, to no avail, I was told by my supervisor's to not consider the constant calls and complaints from certain community groups as priority. This made it difficult for me to address issues and concerns being brought up during monthly meetings with these community groups. This caused confusion and disappointment with me and the members of the community in the expectations of the police department's duties to the community. The community realizes that there are legitimate issues that are not being addressed and constantly ask me why these issues aren't being addressed. Unfortunately, I don't have an answer that I can freely relay to them.

- On January 14, 2004, while utilizing a sick day, Sgt. Scott Jones responded to my residence to inform me that, I was being moved to another area. I asked Sgt. Scott Jones, "Why am I being moved out of the Weed & Seed area". At this time he stated that, "They want Younger more aggressive officer for

000150

your position to make drug arrest and to increase the drug stats". I then asked Sgt. Scott Jones, "who said this, Lt. Rock and Sgt. Staats". He replied, yes. At this time Sgt. Scott Jones told me that I was being moved under his supervision and working in the 11th District Area. This all came as a shock to me since just prior to November 2003; Lt. Mitch Rock acknowledged me and my partners for a job well done with our arrests stats. Also, after attending numerous Weed & Seed meetings with Weed & Seed Program Officials, I was advised by Weed & Seed Officials that I and other Weed & Seed Officers were doing a good job. We were also told by Weed & Seed Officials that we've gotten very good responses from community members regarding our efforts. Even Lt. Mitch Rock has stated repeatedly in role call in the presence of other officers, that he was satisfied with all the officers under F Platoon and that no one was going to be transferred or removed from this unit. Certainly, I understand that the Weed & Seed Officers had different expectations. However; review of my stat sheets show that I have met and in some instances exceeded other Weed & Seed Officers in arrests. This brings up the questions: Why am I being moved? I feel that it was blatantly discriminatory that I was told that they wanted a younger officer for my position. This totally contradicts the fact that the job is getting done without change needed. I don't feel this is justified.

- I am the only officer that was never officially called in to a meeting like other Weed & Seed Officers whereas they were informed of their expectations and changes to the Weed & Seed Officer positions. All this took place during the week of January 13, 2003 while I was off work. Upon returning to work, I approached Sgt. Staats and asked why I was being moved to another area. I waited for his response which was a slow response, "Well", as though he did not have an answer. Sgt. Staats did not look at me and did not respond thereafter.


I am very disappointed in the leadership that has been demonstrated. I feel that I have been tortured for the past few months. This type of stress and torment has spilled over into my personal life causing hardship within my family life. This treatment on my job has caused problems within my personal relationship with my wife as well. In addition to losing my appetite, I have lost sleep and wake up around 3:00 a.m. every morning and can not go back to sleep. I'm constantly wondering, what next? It is hard for me to focus on my job not knowing what exactly is expected of me. My employment history reflects commitment and dedication to the Wilmington Police Department. My records show that I have always represented this department in a professional manner. I have worked with other supervisors in the community policing capacity and have never experienced this blatant, degrading disrespect and humility. A team is only as good as its leaders. Leaders are supposed to lead by example not by a strong arm. When I put this badge on almost 15 years ago, I wanted to belong to a professional police department where I could utilize my skills and not feel

hindered or ridiculed by my superior officers. This is the only time in my career that I have experienced such aggravation and feel as though that I am being targeted. I worked very hard to become a police officer. This was what I wanted since I was a child. I simply did not expect to have to experience this horrific, prejudice and unprofessional treatment within the Wilmington Police Department by Lt. Mitch Rock. I am an officer of integrity and my record exemplifies my dedication and respect of authoritive figures. I submit this DI having full faith and confidence that all of the above referenced concerns will be taken seriously, and investigated thoroughly and expediently.

Respectfully,
Everett D. Turner

Sign:_____

Date:_____

000151

**J**

### OFFICE OF PUBLIC SAFETY

### DEPARTMENT OF POLICE

### WILMINGTON, DELAWARE

## MEMORANDUM

**TO:**   Michael J. Szczerba
Chief of Police

**FROM:**   Lt. Mitchell J. Rock   *Lt. MR*
Executive Officer
Uniformed Services Division

**DATE:**   22 Jan. 04

**RE:**   Personnel Transfers

This memorandum is being submitted to request the following transfer of officers from F – Platoon to one of the five patrol platoons. I also request that these officers be replaced by officers that are named below, via transfer from their respective patrol platoon to F - Platoon. The personnel changes are as follows:

Ptlm. Reginald Harvey transferred from F – Platoon to one of the five patrol platoons.
Cpl. Everett Turner transferred from F – Platoon to one of the five patrol platoons.

Ptlm. George Pigford transferred from A – Platoon to F – Platoon.
Cpl. Robert Johnson transferred from C – Platoon to F – Platoon.

Your consideration in this matter is greatly appreciated.

*I have spoken with Lt. Rock & his sergeants regarding these moves. They advise due to performance the believe the moves are necessary to keep "F" platoon providing the highest level of performance.*

*Geof May WPD  2-6-04*

*Insp [signature]  2/13/04*

**K**

MAR 2 0 2006

## MENTAL HEALTH SYSTEMS, INC.

19-C Trolley Square
Wilmington, Delaware  19806

Phone 302-658-9707  Fax 302-658-3929

Board Certified in Clinical Psychiatry
Board Certified in Forensic Psychiatry

Medical Director, Medisys Health Network
Joint Commission (JCAHO) Consultant

April 21, 2004

Capt. Michael Maggitti
Department of Human Resources
Wilmington Police Department
300 N. Walnut Street
Wilmington, DE   19801

Re:  Everett D. Turner

Dear Capt. Maggitti:

At your request I evaluated Everett Turner on April 15, 2004.  He is a very angry man who is very resentful about what he considers to be humiliating and degrading treatment by the police.  He claims this treatment has caused his blood pressure to become more intense and created problems with depression and anxiety.  He indicates he no longer enjoys things he does, and he suffers from insomnia.  He claims that the terms which have been used towards him include racial terms.  He also claims that he specifically complained about the language that was used by his supervisors towards him and that nothing was done about this.  The problems which we are talking about started in October 2003.  Although he is thinking about returning to work, it is quite clear that he views the whole police department as a hostile place.

Mr. Turner has only received six treatments from a psychiatrist, and these have been nonmedication treatments.  Medication has been prescribed by his family practitioner.  He was not clear what medications he is taking.

000350

RE: Everett D. Turner          - 2 -          April 21, 2004

In addition to the interview, I administered a Minnesota Multiphasic Personality Inventory-2 (MMPI-2) to Mr. Turner. A frank profile was produced, and scales which reflect histrionic behavior and paranoid thinking were the major scales which were produced. Mr. Turner appeared to be immature and impulsive, angry and hostile, and hypersensitive to rejection on the MMPI-2. Depressed mood was also identified. He feels estranged and alienated, suspicious of others, and tends to blame them for his own problems. The MMPI-2's diagnostic assessment is that of personality disorder. In terms of treatment, he seems to be a poor candidate for psychotherapy.

In my interview with Mr. Turner, he was intensely talkative and affectively angry. I could detect no evidence of clear psychotic symptoms. He appears to be angry and suspicious about the police. Whether or not this reaches a level of paranoid thinking in which he is suspicious and unwilling to examine other alternative explanations is unclear. Certainly at the time I interviewed him he was so angry that it would be difficult for him to consider other alternatives than his own explanation of what happened to him and how he was wronged. Because of his anger and his sense of being humiliated, I believe Mr. Turner is a very poor choice for return to work status at this point.

Mr. Turner is a good candidate for psychiatric medications. He seems to be receiving these from a family practitioner. I would recommend a re-examination by a psychiatrist of the medication regimen he is currently receiving. He did not bring his medications with him, nor was he clear with me about which medications he was taking.

I think there is some risk of Mr. Turner's returning to the police environment. He was potentially threatening in his speech to me about situations in which he would be spoken to inappropriately and his sense that he might respond in an aggressive manner to such a situation. Because of his high level of anger and aggression, his completely negative attitude towards the police, and what sounds like his somewhat tenuous control at this point, it is not recommended that he return to any police work at this time.

000351

Sent By: ;   3024751574;   Mar-8-06  5:49PM;   Page 3/3

RE: Everett D. Turner          - 3 -          April 21, 2004

These opinions are given with a reasonable degree of medical probability.  It is assumed that the information provided to me is correct.  If more information becomes available at a later date, an additional report may be requested.  Such information may or may not change the opinions rendered in this evaluation.

If you have any questions, please feel free to contact me.

Best wishes,

David E. Raskin, M.D.

DER/ckm

Dictated but not read

Via mail

000352

L

FORM 13

**PETITION TO DETERMINE COMPENSATION DUE TO INJURED EMPLOYEE**

RECEIVED

*124515 · F*

2004 MAY 27  A 11: 56

# To the Industrial Accident Board of the State of Delaware
# Sitting in and for                                              County

WORKMEN'S COMPENSATION
STATE OF DELAWARE

*Everett D. Turner* Claimant

vs.

*Wilmington Department of Police*
*City of Wilmington* Employer

Claimant SS # *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*

DOB *1-12-64*

Ins. Carrier *Blue Cross Blue Shield*
*Of Delaware*

### The undersigned petitioner respectfully represents:

That the above named claimant and the above named employer have failed to reach an agreement in regard to compensation due said claimant as an employee of said employer.

The undersigned therefore prays that your Honorable Board shall, after due notice of the time and place of hearing served on all parties in interest, hear and determine the matter in accordance with the facts and the law and state its conclusions of fact and rulings of law.

My signature on this petition is authorization for any doctor or hospital or other health care provider to supply any and all medical records and reports to the bearer of the original or a copy of this petition regarding any medical condition provided all requests for this information are in writing.

Dated this ___*27*___ day of ___*May*___ A.D. ~~19~~ *2004*

*Everett D. Turner*
Name

*1601 Chestnut St. Wilm De 1805*
Address

P 0003

# INDUSTRIAL ACCIDENT BOARD
### STATE OF DELAWARE

RECEIVED

04 MAY 27 A 11 56

### Statement of Facts Upon Failure to Reach an Agreement

1. Name of employee _Everett D. Turner_

2. Residence of employee _1601 Chestnut St._

3. Employee's Telephone Number _____

4. Date of Accident _1-27-04_

5. Place of Accident _Wilmington Police Department 300 N. walnut St_

6. By whom employed at the time of accident _City of Wilmington_

7. Occupation of employee at the time of accident _Police officer_

8. Nature of accident and how it happened _Work related stress inflicted_ _by my superior officer_

9. Describe the nature of injury _Due to the continuous derogatory_ _treatment and name calling and comments, It was_ _necessary for me to be treated for stress, depression_ _and high blood pressure._

10. Did employee receive medical, surgical or hospital service _I received medical_ _treatment from Doctor Padma Lingam, Consulting De family center,_

11. When was notice of injury given to or received by employer _1-27-04_

12. Give names and addresses of all employers for the past 5 years _Wilmington_ _Department of Police / City of Wilmington 800 N._ _French Street._

13. State weekly wage when injured _____

14. State names and addresses of all treating doctors for this claim _Doctor Padma Lingam_ _25 7th Street New castle De. 19_ _+ Doctor David Rackin, 19 20C Trolley Square Wilm De._ _Delaware Family center Jane G. Anderson 3608 Lancaster Ave_

15. State names and addresses of all other treating doctors for the last 10 years *Doctor*
*Soma Sunderam Padmalingam M.D 25 with St. New Castle*
*DE 19720*

16. Give names and addresses and dates of treatment of all hospitals and institutes treating you
for this injury *Dr. S Padmalingum MD 25 W. 7th St New Castle, DE 19720*
*Jane G. Anderson, LCSW, BCD 3608 Lancaster Pike Wilmington, DE 1980*

17. To what extent did injury prevent employee from working and for how long *Since 1-27-04*
*to current I have been diagnosed with acute stress and*
*treated for stress, anxeity, depression, and high blood pressure*

18. State whether or not employee has fully recovered and if only partially to what extent *No, due*
*to the on-going pro-longed investigation by the city, which has also created a*
*hostile work environme*

19. If employee has resumed work state when and give name of present employer
*N/A*

20. State what trade or occupation and weekly wages *N/A*

21. If employee has not resumed work state how long likely to be incapacitated from doing so
*Unknown*

22. Give description and dates of all previous and subsequent injuries and identify all

*N/A*

23. State any other important facts bearing on the case above presented *The investigation is*
*being pro-longed by the department of police in addition to creating a host*
*work environment based on the conduct of the investigation. Based on the*
*doctor (Raskin) recommendation, I was not fit for duty but yet they have placed.*
*in a no pay status,*

Dated this _____ 27 _____ day of _____ May _____ A.D. 19 2004

*Everett D. Turner*
Name

DOCUMENT NO. 60-07/89/01/05 - I, 57

M

# Wilmington
# Department of Police

# Memo

**To:**   Inspector James Wright
          Uniformed Operations

**From:** M/Sgt. Steven H. Barnes

**Date:** 6-24-04

**Re:**   Cpl. E. Turner

Sir,

In regards to the above, I have conducted follow up questions to Cpl. Lynch, Alequine and Harvey. As an end result to all questions it appears that there are two witnesses to the comment "Everette shut the fuck up and sit down". They are Cpl's. Lynch and Curry. Cpl. Harvey had nothing to add regarding the Christmas party. He was not involved in the conversations with Rock, Rentz and Crawford. He just felt that there was "bad air" to what he was overhearing, such as "I'll send you back to patrol". We do know from all other reports and the participants that the conversation between these officers was not hostile and in fun.

Finally I could not find any "F" platoon officers that could confirm that Turner ever told Lt. Rock at a roll call or otherwise, that his comments were unwanted.

000261

N

## STATE OF DELAWARE OFFICE OF WORKERS' COMPENSATION
## AGREEMENT AS TO COMPENSATION

EMPLOYEE     Everett D. Turner          EMPLOYER City of Wilmington
ADDRESS      1601 Chestnut Street          ADDRESS    800 N. French Street
             Wilmington, DE 19805                      Wilmington, DE 19801

The above have reached an agreement in regard to compensation for the injury sustained by said
employee and submit the following statement of facts relative thereto:
DATE OF INJURY **01/27/04**                    DATE DISABILITY BEGAN **01/27/04**
CAUSE/PLACE OF ACCIDENT –interaction with supervisors/Wilmington, DE
NATURE/PART OF BODY- Stress
PROBABLE LENGTH OF DISABILITY (if known) undetermined
The terms of this agreement under the above facts are as follows:
This agreement is for (check all that apply)  X Total Disability      Temporary Partial
Permanent Partial Disability    Disfigurement      Commutation      Medical Only
Salary in Lieu of Workers' Compensation

That the said shall receive compensation at the rate of $506.81 per week based on an average weekly
wage $947.20 of and that said compensation shall be payable X weekly  biweekly  monthly
from and including the 27th day of **January 2004** until terminated in accordance with the provisions of
the Workers' Compensation Law of the State of Delaware
**BENEFITS FOR TOTAL/PARTIAL DISABILITY, (LOST WAGES) SHALL REQUIRE YOU TO
ADVISE THE NAMED CARRIER/SELF-INSURER/THIRD PARTY ADJUSTER OF ANY
CHANGE IN EMPLOYMENT STATUS AND/OR DISABILITY. FAILURE TO NOTIFY A
CHANGE IN STATUS IS PUNISHABLE PURSUANT TO TITLE 18, DELAWARE CODE,
CHAPTER 24, AND/OR TITLE 11, DELAWARE CODE, SECTION 913.**

WITNESS _____     EMPLOYEE _Everett D. Turner_
                    (SIGNATURE)                              (SIGNATURE)

ADDRESS _____     ADJUSTER/ATTORNEY_____

                    DATE OF AGREEMENT June 28, 2004

For Accounting Use Only:
        Approved by: _____
        Date of Approval _____

Document No.: 60-07-01-01-12/97
C.O.W.W.C.AGREEMENT

O

OFFICE OF PROFESSIONAL STANDARDS

WPD CASE NO. _____

OPS CONTROL NO. _04-198_

INVESTIGATOR: _Wright / Barnes_

## OFFICE OF PUBLIC SAFETY

## DEPARTMENT OF POLICE

## WILMINGTON, DELAWARE

## DEPARTMENTAL INFORMATION

**TO:**       Michael J. Szczerba
              Chief of Police

**FROM:**    Inspector James H. Wright
              Inspector of Uniform Operations

**DATE:**    **29 June 2004**

RE:          **Internal Investigation/Everett Turner**

Relative to the above complaint that was submitted by the above Officer, Everett Turner, on January 26, 2004, this writer has completed the investigation and makes the following comments and recommendation.

Investigative Procedure:

All subordinate Officers working on F squad were requested to submit a departmental information report and all complied.

Sergeants, Ciotti, Jones and Staats also submitted departmental information reports.

Lieutenant Mitchell Rock was interviewed and said interview was taped in my office by Msgt. Barnes who assisted me in the investigation.

Officer Everett Turner was interviewed at his residence and said interview was taped by Msgt Barnes.

A-154

Page 2

Follow-up interviews were conducted for clarification and this writer met with Crawford and Rentz at different times in my Office for interviews. In addition, another follow-up was conducted with the following officers for further clarification, they were: Officer Lynch, Officer Alequine, Officer Curry and Officer Harvey.

Conclusion:

This writer reviewed all reports submitted along with notes from the interviews and conclude the following.

F squad is a small close knit group of Officers tasked to do a multitude of assignments. They work a two shift schedule and at times their schedule is flexed to meet the demand of the department. Roll calls are informal and both supervisors and subordinates "bust" on one another. Turner claims that Lt. Rock called him "mother fucker and blank". Several Officers on F squad verified that Lt. Rock used the word "mother fucker and blank" while addressing Officers.

Officer Turner claims Lt. Rock loosely used the word "nigger" at roll call. This is unfounded. Through my investigation, it was determined that Lt. Rock used the word "nigger" in a past incident with a defendant and he was merely quoting the defendant. I can find at no other time that Lt. Rock used this word. In addition, when this story was being told, no other minority Officer present was offended.

Officer Turner states that during the month of January 2004, he greeted Lt. Rock at the beginning of a roll call and Lt. Rock replied "Everett, shut the fuck up and sit the fuck down". This can be substantiated by Officer Lynch and Curry who heard Lt. Rock say to Cpl. Turner "shut the fuck up and sit the fuck down".

Officer Turner claims that during the period of November 2003 thru January 2004 during roll call, Lt. Rock claimed that he (Turner) stole his clip board. He further advised that Lt. Rock snatched the clipboard form his hands and threw his papers on the floor in front of everyone and stated "how do you like that mother fucker, fucking thief". It was determined that Officer Turners partner, Master Cpl. Alvin Boardley switched the clip board as a practical joke and in the course of the joke, Lt. Rock threw the clip board on the floor and "busted" on Turner. Several Officers were present at roll call and recalled this incident.

Officer Turner also claims that in December 2003, Lt. Rock berated him and his partner Curry stating "you guys are fucking up, on and off duty". Lt. Rock does not recollect this incident and I can not corroborate this through the submitted reports. Officer Turner also adamantly insists that during the units Christmas party, some sort of altercation occurred

Page 3

at the restaurant between Lt. Rock, Crawford and Rentz. In my interview with Turner over this alleged altercation, he appeared to be deeply troubled about this incident. He talked and dwelled about this for a period of time. It appeared to bother him so much, that this writer reviewed the reports again and eventually interviewed Rentz and Crawford. Rentz states that no such incident occurred at the Christmas party. When I interviewed Crawford, he states that no such incident occurred also; however, he did state that his wife was upset with him regarding his personal behavior at the party (busting on everyone). Crawford also advised that he spoke to Turner days after the party and that Turner may misinterpret his remarks. He also denies that there was any altercation between either Rentz and himself or with Lt. Rock.

Officer Turner claims that Sgt. Jones responded to his residence to check on him and advised that he was being moved to another area. He further states that when he questioned why, he was told that "they want younger more aggressive officers for your position to make drug arrests and to increase the drug stats". Sgt. Jones states that he never told Officer Turner this.

During this investigation, I could not verify through any interviews or written reports where Officer Turner told Lt. Rock that his comments were not welcomed and to stop addressing him in this manner.

Lastly, this writer could find no evidence of discrimination in this investigation.

Recommendation:

This writer can substantiate only one of Officer Turner's allegations which falls under directive 7.3 rude and insulting language. It is clear to me that Lt. Rock's demeanor and conduct during roll calls is not professional. Although this writer is aware that "busting" occurs between first line supervisors and their subordinates, it is not proper for the Lieutenants to engage in such behavior. Lt. Rock should have been more professional with his subordinates and placed himself at a higher level.

Therefore, based upon the reports and interviews, I believe that the language that Lieutenant Rock uses to address his subordinates is considered rude and offensive. Certainly, Officer Turner felt offended on more than one occasion. Based on the facts, I find Lt. Rock in violation of Departmental policy and in violation of directive 7.3 (General Prohibited Activity) under section N Rude or insulting language, class "E" violation. I recommend a written reprimand.

Chief Michael J. Szczerba  7-6-04        A-156

P

**OFFICE OF PUBLIC SAFETY**
**DEPARTMENT OF POLICE**
**WILMINGTON, DELAWARE**

**MEMORANDUM**                                    OPS# 04-198

**To:**   Capt. M. Dietz
          Commanding Officer
          Uniform Services Division


**From:** Inspector James Wright                    $6/29$
          Commanding Officer
          Uniformed Services Division

**Date:** July 8, 2004

**Re:**   Summary Punishment Offer (Lt. Mitchell Rock)

The Chief of Staff Inspections directs that Lt. M. Rock receive Summary Punishment in
the form of a **Written Reprimand** for a violation of the Police Officers Manual,
Directive 7.3 (N) Entitled: Rude or Insulting Language.

### SPECIFICATION

While conducting a roll call for "F" Plt., Lt. Rock used rude and abusive language toward
Cpl. E. Turner.


In accordance with Chapter 8 Directive 8.9, you are directed to have Lt. Rock notified of
the recommended punishment and direct him to submit, within 24 hours of notification, a
report as to his choice of accepting Summary Punishment, or exercising his right to
appear before a Complaint Hearing Board.

Furthermore, you are directed to submit a report indicating the date and time the officer
was notified of the Summary Punishment offer. If for any reason the notification cannot
be completed by July 15, 2004 you are directed to submit a report outlining the reason(s)
why the notification is delayed.

**Q**

JAMES M. BAKER
MAYOR

# City of Wilmington
## Delaware



WILLIAM T. McLAUGHLIN - PUBLIC SAFETY BUIL
300 NORTH WALNUT STREET
WILMINGTON, DELAWARE
19801 - 3936

July 16, 2004

Cpl. Everett Turner
1601 Chestnut St.
Wilmington, Delaware 19805

Dear Cpl. Turner,

The Inspector of Uniformed Operations has conducted an investigation regarding your complaint lodged on January 26, 2004, relative to the actions by a member of the Wilmington Department of Police. Based on the evidence of this investigation, we cannot document that the officer violated any departmental policy concerning your Equal Opportunity or Discrimination claim.

However, Careful examination and evaluation of the facts available established that the actions of the concerned officer were **not** in accordance with the high standards of performance demanded by the Wilmington Department of Police. Accordingly, this office has substantiated a violation as a result of your allegation and the officer will be disciplined appropriately.

If you have any further information regarding this complaint or if you desire further explanation in regards to the disposition, please contact the Office of Professional Standards at 576-3197.

Sincerely,

Nancy S Dietz

Captain Nancy Dietz
Commanding Officer
Office of Professional Standards

ND/shb

P 0077

**R**

THE DEPARTMENT OF LABOR OF THE STATE OF DELAWARE

OFFICE OF LABOR LAW ENFORCEMENT

EVERETT D. TURNER,        )
                       )
      Charging Party,     )
                       )   Case No. 04050435
    v.               )   EEOC No: 17CA400427
                       )
CITY OF WILMINGTON,     )
DEPARTMENT OF POLICE,   )
                       )
      Respondent.      )

## AFFIDAVIT OF LIEUTENANT MITCHELL J. ROCK

STATE OF DELAWARE  )
                : SS.
NEW CASTLE COUNTY  )

I, MITCHELL J. ROCK, being duly sworn according to law, depose and state that the information contained herein is based upon my own personal knowledge and is true and correct:

1.   My name is Mitchell J. Rock.

2.   I am a City of Wilmington Police Officer and during the time the incidents alleged in the Complaint occurred to the present, I have held the position of Lieutenant.

3.  I have been employed as a City of Wilmington Police Officer for approximately eighteen years. I am the Executive Officer of the Uniform Services Division and the commanding officer of "F" Platoon.

4.  My duties include assisting in the daily operation of the Uniform Services Division and commanding a platoon of officers that perform the community policing funciton for the Wilmington Police Department.

5.  On or about February 17, 2004, I received notice from my superiors that Corporal Everett D. Turner had lodged a written complaint against me, alleging that since November 2003 through January 2004 when he went out on sick leave, I had constantly humiliated and embarrassed him in front of his peers by cursing at him, making racial jokes and comments, and being rude to him.

6.  I was shocked to receive the complaint because Corporal Turner had worked under my supervision since April 2001, and I believed we enjoyed a very good working relationship. While Corporal Turner was not the most jovial officer on the force, he was upbeat and would often laugh at jokes made by me and other officers, and make jokes himself.

7.  Roll call generally is a jovial setting where officers often joke with each other. I have used curse words and the term "blank", meaning knucklehead in police lingo, but it was never directed specifically at Corporal Turner or any other officer. During roll call, "blank" has been

-2-

said to officers in general and even from other officers to me, but only in a jovial manner or in jest.

8.  Corporal Turner has never expressed to me that he found the cursing or the use of "blank" to be offensive, humiliating or disrespectful at any time.

9.  I have never called Corporal Turner or anyone else a "nigge r" or other racial slurs or epithets.

10.  The only time I recall referencing the word "nigger" was immediately after a roll call some time in December 2003, when a few officers were sitting around joking and telling their "war stories" on the force. When it was my turn, I recounted an incident in 1989, where some officers were incapacitated in the process of apprehending a black,  male suspect. The punch line was that although the suspect was also injured in the process, when he was taken to the hospital for treatment, the only thing about which he complained was that one of the officers had called him a "nigger."  I used this term in relating a direct quote from this suspect during the telling of the story.

11.  I have never used the term "nigger" at roll calls or any other time; it is not a word in my vocabulary. I used it on the occasion earlier mentioned while I was retelling an incident that occurred years ago.

-3-

12.    When an officer, including Corporal Turner, greets me with "good morning" or "how are you today", I have never responded by cursing them or by telling him to "shut the f_ _ _ up".

13.    In late-December, 2003, several weeks before I even learned of Corporal Turner's Complaint against me, a decision was made to assign him to the East side of the city. He remained in the same division, held the same title, received the same benefits, performed the same duties, worked the same work schedule and remained within my chain of command. The only thing that had changed was that instead of working the West Center City area, he would work on the East side.

14.    Periodic change in the geographic area in which an officer works is not unusual in the Division; and in fact, is management's prerogative.

15.    The ages of the officers in "F" Platoon range from 28 to approximately 50 years old.

16.    In June 2004, the internal investigation into Corporal Turner's Complaint was completed. Corporal Turner's allegations of my use of racial slurs, including the word "nigger" toward him or other officers were unfounded. However, I received a written reprimand for the manner in which I interacted with subordinate officers during roll call, i.e., "busting " on each other and sometimes cursing while addressing each other, in a jovial manner.

-4-

_Lt. Mitchel J. Rock_
Lieutenant Mitchell J. Rock

SWORN TO AND SUBSCRIBED before me this 17th day of August, 2004.

Notary Public
**ANNE S. HERRELL**
**NOTARY PUBLIC**
**STATE OF DELAWARE**
**COMM. EXPIRES 10/15/05**

-5-

S

*Copy to Everett*

**Jane G. Anderson, LCSW, BCD**
**Delaware Family Center**
**3608 Lancaster Pike**
**Wilmington DE 19805**
**302/995-9600 x 5**

January 30, 2005

Captain Michael E. Maggitti
Human Resources Division
Office of Public Safety
Department of Police
Wilmington DE 19899

Dear Captain Magitti,

At the request of my client, Everett Turner, I am writing to share with you my recommendation that Mr. Turner not return to work as a Wilmington police officer. Despite his strong work ethic and popularity with the citizens he served, he met with blatantly racist treatment in a hostile work environment. There is no reason at all to believe that the environment has changed to the point where it would not once again threaten my client's physical and emotional health.

As a native and longtime resident of Wilmington, I hereby take the liberty to express my great surprise and severe disappointment at what I have learned of the procedures of your department. I am aware that other officers would not have the option of leaving as Mr. Turner did and would have to do their very difficult work under conditions that can only be described as mean-spirited and oppressive. Surely in 2005 we know better how to run a successful organization.

Please contact me if you have any questions about this matter.

Yours very truly,

*Jane G. Anderson*

Jane G. Anderson, LCSW, BCD

000371

**T**

JAMES M. BAKER
MAYOR

## City of Wilmington
### Delaware



LOUIS L. REDDING - CITY/COUNTY BUILDING
800 FRENCH STREET
WILMINGTON, DELAWARE
19801 - 3537

June 6, 2005

Senior Corporal Everett Turner
Uniform Services Division

Dear Corporal Turner:

Pursuant to my authority as Chief of Police as established by City of Wilmington Code Section 39-126, I hereby place you on the Wilmington Department of Police Retirement List, effective July 1, 2005. Please contact Captain Michael Maggitti of the Human Resources Division, (302)576-3176, as soon as possible. It should also be noted that all departmental clothing and equipment must be returned prior to your retirement date.

On behalf of the Wilmington Department of Police, I thank you for your dedicated and loyal service. If you have any questions, please contact me at (302)576-3940.

Sincerely,

Michael J. Szczerba

Michael J. Szczerba
Chief of Police

MJS/lah

cc:    Captain Michael Maggitti, Human Resources
       Monica Gillespie, Director of Personnel

**U**



JAMES M. BAKER
MAYOR

$\mathfrak{City}$ of $\mathfrak{Wilmington}$



$\mathfrak{Delaware}$



LOUIS L. REDDING - CITY/COUNTY BUILDING
800 FRENCH STREET
WILMINGTON, DELAWARE
19801 - 3537

(302) 576-3854
Medical Dispensary
605 Christina Avenue, Building A
Wilmington, DE 19801

August 8, 2006

To Whom It May Concern:

RE:  Everett Turner
     SSN 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
     Our W.C. File No.: WPD04-135

This is to confirm that the above individual is presently receiving total disability payments through the City of Wilmington Workers' Compensation Program.  His weekly indemnity check is in the amount of $506.81.  Mr. Turner has an open agreement and an end date has not been determined.

If you have any questions feel free to contact this office.  Thank you.

Very truly yours,

Pamela M. White
Risk Management Analyst