**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

EVERETT D. TURNER,                          :
                                            :
                        Plaintiff,          :      C.A. No.  05-716 GMS
                                            :
            v.                              :      TRIAL BY JURY DEMANDED
                                            :
                                            :
CITY OF WILMINGTON,                         :
                                            :
                        Defendant.          :

**DEFENDANT'S REPLY BRIEF IN SUPPORT**
**OF ITS MOTION FOR SUMMARY JUDGMENT**

                                   Alex J. Mili, Jr., Esquire (I.D. #4125)
                                   Senior Assistant City Solicitor
                                   Louis L. Redding City/County Building
                                   800 N. French Street, 9th Floor
                                   Wilmington, DE 19801
                                   (302) 576-2175
                                   Attorney for Defendant City of Wilmington

September 25, 2006

## **TABLE OF CONTENTS**

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

SUMMARY OF ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.    TURNER HAS FAILED TO ADDRESS ALL ELEMENTS OF A HOSTILE WORK
        ENVIRONMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.    TURNER FAILS TO RESPOND TO THE CITY'S ARGUMENTS ON THE
              FIRST PRONG - INTENTIONAL RACE-BASED CONDUCT    . . . . . . . . . 2

        B.    TURNER FAILS TO ESTABLISH THE SECOND PRONG - SEVERE OR
              PERVASIVE CONDUCT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        C.    TURNER FAILS TO ADDRESS THE FOURTH PRONG - OBJECTIVELY
              DETRIMENTAL CONDUCT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        D.    TURNER FAILS TO ESTABLISH THE FIFTH PRONG - RESPONDEAT
              SUPERIOR LIABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

             1.    NO RESPONDEAT SUPERIOR LIABILITY UNDER CO-WORKER
                  HARASSMENT THEORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

             2.    NO RESPONDEAT SUPERIOR LIABILITY UNDER SUPERVISOR
                  HARASSMENT THEORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    II.    TURNER'S TITLE VII CLAIM DOES NOT SATISFY THE ELEMENTS OF
        *MCDONNELL DOUGLAS*, NOR DOES *MCDONNEL DOUGLAS* EVEN APPLY TO
        HOSTILE WORK ENVIRONMENT CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A.    TURNER'S INABILITY TO SATISFY HIS PRIMA FACIE BURDEN UNDER
              THE INAPPLICABLE *MCDONNELL DOUGLAS* TEST . . . . . . . . . . . . . . . 13

             1.    TURNER WAS NOT TREATED ANY DIFFERENTLY THAN
                  CAUCASIAN OFFICERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

             2.    TURNER'S STRESS IS NOT A TANGIBLE EMPLOYMENT
                  ACTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        B.    TURNER'S INABILITY TO CARRY HIS ULTIMATE BURDEN OF
              DISPROVING THE CITY'S NON-DISCRIMINATORY REASON FOR ITS
              ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    III.    TURNER HAS NOT IDENTIFIED ANY ADVERSE EMPLOYMENT ACTION,
        CAUSAL NEXUS OR PRE-TEXT THAT WOULD ESTABLISH A CLAIM OF
        RETALIATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

A.     LACK OF ADVERSE EMPLOYMENT ACTION . . . . . . . . . . . . . . . . . . . . .  17

B.     LACK OF ANY CAUSAL LINK  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

C.     THE TRANSFER WAS NOT A PRE-TEXT FOR DISCRIMINATION . . . .  18

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

AFFIDAVIT OF ALVIN BOARDLEY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit "A"

## TABLE OF CITATIONS

### Cases

*Andrews v. City of Philadelphia,* 895 F.2d 1469 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Arasteh v. MBNA*, 146 F. Supp.2d 476 (D.Del. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Bray v. Marriott Hotels*, 110 F.3d 986 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*Carrion v. City of Wilmington*, 2005 U.S. Dist. LEXIS 787 (D.Del. 2005) . . . . . . . . . . . . . . . . . . . . 8

*Caver v. City of Trenton*, 420 F.3d 243 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 17

*Cherkaoui v. HSBC Pay Servs.*, 2006 U.S. Dist. LEXIS 9348 (D. Del. 2006) . . . . . . . . . . . . . . . . . . . 14

*Ellerth. v. Burlington Indus.*, 524 U.S. 742 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Faragher v.City of Boca Rotan*, 524 U.S. 775 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ferguson v E.I. duPont de Nemours and Company, Inc.*, 560 F. Supp. 1172 (D. Del. 1983) . . . . . . . . 18

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

*Hampton v. Tinton Falls*, 98 F.3d 017 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Harris v. Forklift*, 510 U.S. 17 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hicks v. St. Mary's Honor Ctr.*, 509 U.S. 502 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hill v. Moskin Stores, Inc.,* 165 A.2d 447 (Del. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Jensen v. Potter*, 2006 U.S. App. LEXIS 2316 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*Johnson v. Bally's Atlantic City*, 2005 U.S. App. LEXIS 19313 (3d Cir. 2005) . . . . . . . . . . . . . . . . . 12

*McDonnell Douglas v. Green*, 411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . 1, 12, 13, 14, 15, 16, 18, 20

*Paris v. Christiana Care*, 197 F.Supp.2d 111 (D.Del. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Pennsylvania State Police v. Suder,* 542 U.S. 129 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

*Persinger v. Delmar School District*, 2004 U.S.Dist. LEXIS 12805(D.Del. 2004) . . . . . . . . . . . . . . 5, 6

*Poland v. Computer Sciences Corp.,*2005 U.S. Dist. LEXIS 22618 (D. Del. 2005) . . . . . . . . . . . . . . . 17

*Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Seabrook v. Gadow*, 2003 U.S. Dist. LEXIS 10096 (D. Del. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Seldomridge v. Uni-Marts, Inc.*, 2001 U.S. Dist. LEXIS 9491 (D. Del. 2001) . . . . . . . . . . . . . . . 6, 7, 14

*Trunzo v. Ass'n of Prop. Owners of the Hideout, Inc.,*
     2004 U.S.App. LEXIS 1639 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Tucker v. Merck & Co. Inc.*, 2005 U.S.App. LEXIS 9087 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 2

*Zelinski v. Pennsylvania State Police*, 2004 U.S. App. LEXIS 21235 (3d Cir. 2004) . . . . . . . . . . . . 6, 7

**Statutes**

Title VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**Rules**

Fed.R. Evid. 408 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## <u>SUMMARY OF ARGUMENTS</u>

1.      Turner's Title VII claim fails because his Answering Brief declines to respond to the City's legal arguments for the first, second, fourth and fifth prongs of a hostile work environment (most notably the fourth prong, which is completely omitted from Turner's Answering Brief).  For the first prong, Turner simply restates seven undisputed factual allegations, without responding to the City's legal argument that these undisputed facts do not establish the intentional race-based discrimination.  For the second prong, Turner does not respond to the City's arguments as to why his factual allegations do not establish severe or pervasive conduct.  Turner's Answering Brief contains no mention whatsoever of the fourth prong, and therefore Turner concedes the City's argument that the fourth prong is not met.  As for the fifth prong, Turner misstates (and, in turn, misapplies) the correct legal standards for respondeat superior liability.

2.      Turner incorrectly cites and applies the *McDonnell Douglas* test, which does not apply to hostile work environment claims.  Even if it did apply, Turner has not met the prima facie elements of *McDonnell Douglas,* nor has he met his ultimate burden of disproving the City's non-discriminatory reason for its employment action.

3.      Turner's retaliation claim fails because he has not established any adverse employment action or a causal nexus to his protected activity, nor has he met his ultimate burden of disproving the City's non-discriminatory justification for its employment decision.

**ARGUMENT**

I.    TURNER HAS FAILED TO ADDRESS ALL ELEMENTS OF A HOSTILE WORK
      ENVIRONMENT

Turner's race-based Title VII claim must be dismissed because he has not established all five elements of a hostile work environment claim.  The five elements are: (1) intentional race-based discrimination; (2) severe or pervasive conduct; (3) discrimination that subjectively affects the employee; (4) discrimination that would detrimentally affect an objectively reasonable person of the employee's race; and (5) respondeat superior liability.  *See Tucker v. Merck & Co. Inc.*, 2005 U.S.App. LEXIS 9087, *13 (3d Cir. 2005).

Turner's Answering Brief does not respond to the City's arguments on the first prong, but simply restates the undisputed factual allegations that were addressed in the City's Opening Brief.  Turner's Answering Brief does address the second prong, but he does not respond to (or otherwise distinguish) the City's citation to legal authority that defeats the second prong of Turner's claim.  The City concedes that the third prong is met.  The fourth prong is completely omitted from Turner's Answering Brief, and therefore, Turner does not dispute that he has failed to establish that prong.  Turner does respond to the City's arguments for the fifth prong, but he misstates the standard of liability for co-worker harassment and the official/unofficial dichotomy for supervisor harassment.

A.    TURNER FAILS TO ESTABLISH THE FIRST PRONG - INTENTIONAL RACE-BASED
      CONDUCT

Turner's Answering Brief does not address the City's arguments for the first prong of the hostile work environment.  Rather than address the City's legal arguments, Turner simply restates seven factual allegations, which Turner contends are disputed material facts that should preclude summary judgment. (PAB 15-19)[1]  However, the City's Opening Brief conceded these seven factual allegations, and argued that

---

[1] Throughout this Reply Brief, references to the City's Opening Brief will be cited as "DOB" and Turner's Answering Brief will be cited as "PAB".

they are insufficient to establish the first prong of a hostile work environment. (DOB 12-16)

First, Turner contends that there is a conflict as to whether Lt. Rock used any derogatory terms, such as "mother f-----". (PAB16) On the contrary, the City's Opening Brief construed those allegations in a light most favorable to Turner as the non-movant. (DOB 14-16) Accepting those allegations as true, the City's Opening Brief argued that Lt. Rock's use of race-neutral profanity was not sufficient to establish the first prong of a hostile work environment. (DOB 14-16) Turner's Answering Brief does not respond to that argument.

Second, while the City acknowledged that Lt. Rock used the word "blank" (DOB 5), Turner contends there is a dispute as to whether the word "blank" is racially derogatory. (PAB 16-17) The City's Opening Brief appended affidavits in which Turner's colleagues assigned various meanings to this word, such as "loser", "zero", "defendant", or "negative term filled in by the receiver in the communication". (DOB 5) In response, Turner's Answering Brief appends the affidavit of Eric Green. (PAB 21-22) Green, an African-American, claims that he invented the word "blank" as a "means of substituting the 'n' word". (PAB 22) Turner also appends the affidavits of three other officers (Boyd, Harvey, and Babby) who claim that "blank" is a substitute for the "n" word. (PAB 21-22) In Lt. Rock's EEOC affidavit, he stated that he used the word "blank" to mean "knucklehead". (PAB Tab R) Alvin Boardley, an African-American, understands the term "blank" to be a race-neutral term that means "nothing". (Exh. A) In fact, Boardley's affidavit states that Green used the term "blank" toward Caucasians. (Exh. A) These varying definitions ascribed to the word "blank" do not create a dispute of material fact. Instead, these varying definitions confirm that "blank" is a subjective term that can mean whatever the speaker or listener wants it to mean.

Third, Turner contends that there is a dispute as to whether Turner complained to Lt. Rock about his conduct. (PAB 17-18) On the contrary, the City's Opening Brief actually quotes Turner's deposition testimony where he states that he complained to Lt. Rock. (DOB 22) However, any complaints to Lt. Rock are immaterial to Turner's hostile work environment claim. As explained in the City's Opening Brief, Title

VII liability for a hostile work environment turns on whether the employee complained to a higher level of authority. (DOB 21-23) Turner admits that prior to January 26, 2004, he did not elevate his complaints to a higher level of supervisors, such as Captain Dietz or the Police Chief. (A 251-258) Turner's lack of complaints to a higher supervisor (at least prior to January 26) defeat his hostile work environment claim.

Fourth, Turner contends that there is a dispute as to whether Lt. Rock told Turner to "shut the f---up". (PAB 18) This allegation is not disputed, but was conceded in the City's Opening Brief. (DOB 6, 15) The City acknowledged that Lynch and Curry verified this comment in follow-up interviews with Sergeant Barnes. (DOB 6, 15) The City also argued that this comment was race-neutral, and therefore insufficient to establish the first prong of a hostile work environment. (DOB 15) Turner's Answering Brief does not respond to that argument.

Fifth, Turner contends there is a dispute about an incident in which Lt. Rock snatched a clipboard from Turner's hands. (PAB 18) This allegation is not disputed because the City conceded the clipboard incident in its Opening Brief. (DOB 6, 15) The Appendix to the City's Opening Brief included Alvin Boardley's internal questionnaire response, in which he described the incident as a joke. (A98)[2] This City argued that this incident was just another race-neutral taunt to which Turner overreacted. (DOB 15, 18, 21) Again, Turner's Answering Brief declined to respond to that argument.

Sixth, Turner contends there is a dispute about whether Lt. Rock told Turner and Curry that they were "f---ing up on and off the job". (PAB 18) On the contrary, this comment was conceded and discussed at length in the City's Opening Brief. (DOB 6, 15) The City argued that the comment was race-neutral, particular because it was also addressed to Curry, who is Caucasian. (DOB 14) Again, Turner's Answering Brief declined to respond to that argument.

Lastly, Turner cites the controversy surrounding Lt. Rock's singular quotation of the word "nigger".

---

[2] Turner objected to the inclusion of Boardley's questionnaire because the City's Appendix contained no verifying affidavit from Boardley. In response to that objection, Boardley's affidavit is attached as Exhibit "A" of this Reply Brief.

(PAB 18-19)  This fact was not disputed.  The City's Opening Brief discussed it at length, particularly by citing Turner's internal complaint where he concedes that the epithet was not directed to him personally.  (DOB 13 and A28)  The City's Opening Brief also cited Turner's deposition testimony, wherein he conceded that the quotation was the only time he ever heard Lt. Rock use that epithet.  (DOB 7 and A225) Based on these admissions, the City cited the Third Circuit's decision in *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005), which held that the mere use of racial epithets does not support a Title VII claim if the epithets were not personally directed to the plaintiff.  (DOB 13)  Again, Turner's Answering Brief declined to respond to that argument.

In sum, none of the seven above-cited factual allegations is disputed.  The City's Opening Brief accepted these factual allegations in a light most favorable to Turner as the non-movant.  Accepting these allegations as true, the City argued that they fail to establish the first prong of a hostile work environment because they are race-neutral. (DOB 14-16) Other than his subjective definition of the word "blank", Turner cites no evidence that the above-cited profanity was tied to his race.  Because the profanity was not tied to Turner's membership in a protected class (race), the City argued that it is not sufficient to establish a Title VII claim.  (DOB 14-16)  *See Jensen v. Potter*, 443 F.3d 445, 449 (3d Cir. 2006)("[I]f the reason for [the] harassment is one that is not proscribed by Title VII, it follows that Title VII provides no relief.").

At most, these undisputed allegations establish a strained relationship between Lt. Rock and Turner. The City cited *Persinger v. Delmar School District*, 2004 U.S.Dist. LEXIS 12805, *8 (D.Del. 2004), for its holding that a strained employment relationship and discriminatory attitudes are not sufficient to establish a Title VII claim.  (DOB 12-15)  The City's Opening Brief relied upon *Persinger* and *Caver* in support of its argument that Turner's Title VII claim fails the first prong of a hostile work environment.  (DOB 12-16) Turner's Answering Brief does not distinguish his claim from *Persinger* or *Caver*, nor does he dispute the City's reliance on those authorities.  That alone is sufficient grounds for summary judgment. *See Seabrook v. Gadow*, 2003 U.S.Dist. LEXIS 10096, *25(D.Del. 2003)("By failing to establish that he suffered from

intentional discrimination because of his race or gender, plaintiff has failed to prove a prima facie case for hostile work environment.").

        B.       <u>TURNER FAILS TO ESTABLISH THE SECOND PRONG - SEVERE OR PERVASIVE CONDUCT</u>

Turner's Answering Brief does not respond to the City's arguments for the second prong, which is severe and pervasive conduct. The City argued that insults, teasing, and episodic instances of ridicule do not rise to the heightened severe or pervasive standard. (DOB 16-19) The City supported this argument with citation to this court's decision in *Seldomridge v. Uni-Marts, Inc.,* 2001 U.S. Dist. LEXIS 9491, *30-31 (D.Del. 2001). (DOB 18) The *Seldomridge* court recognized that "[o]rdinary tribulations of the workplace, such as the sporadic use of abusive language . . . and occasional teasing, are not actionable." Turner's Answering Brief offers no argument that Lt. Rock's actions (if true) amount to anything more than ordinary tribulations of the workplace. Mere ordinary tribulations of the workplace do not meet the severe or pervasive standard. The Third Circuit in *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1483 (3d Cir. 1990), cautioned that the "severe or pervasive" standard requires trial courts to protect employers from lawsuits filed by hypersensitive employees.

Rather than respond to (or otherwise distinguish) the City's reliance on *Seldomridge* and *Andrews*, Turner focuses on the duration of his allegations about Lt. Rock's conduct. Turner cites *Zelinski v. Pennsylvania State Police*, 2004 U.S. App. LEXIS 21235 (3d Cir. 2004), which held that incidents of harassment occurring over the span of more than a year can be deemed pervasive. (PAB 23) Relying on *Zelinski*, Turner contends that his allegations about Lt. Rock are pervasive because they occurred over the span of two and a half years. (PAB 23) However, Turner already admitted to the EEOC that his allegations about Lt. Rock occurred over the span of only two months. (A32) Turner specifically conceded in his EEOC charge that the earliest date of alleged discrimination was December 15, 2003. (A32) Therefore, Turner's comparison to the duration of harassment in *Zelinski* is inapposite.

The City's Opening Brief specifically addressed the duration of Turner's allegations. (DOB 16-18) The City cited *Paris v. Christiana Care*, 197 F.Supp.2d 111, 118 (D.Del. 1997), which held that six incidents over the span of four months are not frequent enough to be severe or pervasive. (DOB 16-17) Because Turner's allegations in his EEOC charge occurred over the span of half that time (a mere two months), Turner does not meet the severe or pervasive prong, neither in substance nor in duration.

C.    TURNER FAILS TO ADDRESS THE FOURTH PRONG - OBJECTIVELY DETRIMENTAL CONDUCT

Even if Turner could meet the first and third prongs, his Title VII claim must be dismissed because his Answering Brief declines to address the fourth prong of a hostile work environment, which is the objective component. This prong requires a plaintiff to establish that the alleged harassment would have been objectively detrimental to a reasonable employee of the plaintiff's race. (DOB 19-21) This is an indispensable element of a hostile work environment claim. As the U.S. Supreme Court explained, '[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *See Harris v. Forklift*, 510 U.S. 17, 21 (1993). As in *Harris*, this court also recognized that "the most unreasonably hypersensitive employee [is not] entitled to more protection than a reasonable employee." *See Seldomridge v. Uni-Marts, Inc.*, 2001 U.S. Dist. LEXIS 9491, *23 (D.Del. 2001).

Applying *Harris* and *Seldomridge*, the City's Opening Brief argued that Turner's hypersensitive reactions to the workplace do not meet the objective fourth prong of a hostile work environment claim. (DOB 20-21) The City supported this argument with citation to Dr. Raskin's professional psychiatric opinion of Turner's paranoia and hypersensitivity. (DOB 20-21 & A160-162) The City also illustrated Turner's hypersensitivity by contrasting his overreactions to the reasonable reactions of his colleagues in the workplace. (DOB 21)

Turner's Answering Brief does not respond to the City's arguments and evidence for the fourth

-7-

prong, nor does Turner's Answering Brief contain any mention whatsoever of the fourth prong. That alone is sufficient grounds to dismiss the entire hostile work environment claim. *See Carrion v. City of Wilmington*, 2005 U.S. Dist. LEXIS 787, *7-8 (D.Del. 2005)(granting summary judgment when the non-movant failed to respond to the movant's arguments and evidence); *Aratesh v. MBNA*, 146 F. Supp.2d 476, 493 (D.Del. 2001)(confirming that failure to establish even one element of a hostile work environment defeats the entire Title VII claim).

> D.   TURNER'S FAILURE TO ESTABLISH THE FIFTH PRONG - RESPONDEAT SUPERIOR LIABILITY

Turner has not established respondeat superior liability, neither under co-worker harassment theory nor under supervisor harassment theory. As explained in the City's Opening Brief, respondeat superior liability for a hostile work environment turns on whether the harasser is a supervisor or a co-worker. (DOB 21) *See Jensen v. Potter*, 435 F.3d 444, 452-453 (3d Cir. 2006). The City argued that Turner's allegations about Lt. Rock must be categorized as co-worker harassment, given that there were two levels of supervision above Lt. Rock. (DOB 21-22) Turner's Answering Brief does not respond to this argument, nor does he offer any reason why his allegations should be analyzed under supervisor harassment theory. Instead, Turner attempts to argue both theories of respondeat superior liability. (PAB 19) However, for the reasons set forth below, his arguments fail under both theories.

> 1.   NO RESPONDEAT SUPERIOR LIABILITY UNDER CO-WORKER HARASSMENT THEORY

For co-worker harassment cases, there can only be respondeat superior liability if the employer "knew or should have known of the harassment and failed to take prompt remedial action." *See Trunzo v. Ass'n of Prop. Owners of the Hideout, Inc.,* 2004 U.S.App. LEXIS 1639, *10 (3d Cir. 2004). In Turner's case, the City promptly investigated Turner's harassment complaint once he submitted it to the Police Chief on January 26, 2004. (DOB 22) At the conclusion of that investigation, the City took the remedial action of reprimanding Lt. Rock. (DOB 22-23) Turner admits he had no contact whatsoever with Lt. Rock after

January 26, 2004. Therefore, the City is not vicariously liable for any of Lt. Rock's conduct (if proven) that occurred before Turner's complaint on January 26.

Turner's response to this argument is that the City should have intervened sooner. (PAB 19) Turner claims that Lt. Rock's behavior took place during roll call in front of Turner's peers, therefore, in Turner's view, the City was placed on constructive notice of Lt. Rock's so-called "harassment" before Turner formally complained. (PAB 19) This argument is belied by the record. In responding to their internal questionnaires, Turner's colleagues denied that he was ever subjected to rude, humiliating or racial comments by Lt. Rock. (A59-105) If Turner's peers were not aware of any such conduct (assuming it even occurred), then Turner's middle and upper level managers could not be imputed with constructive notice of such conduct. The Third Circuit's decision in *Trunzo* confirms that an employer cannot be liable for a co-worker's conduct that is not known to the employer.

### 2. NO RESPONDEAT SUPERIOR LIABILITY UNDER SUPERVISOR HARASSMENT THEORY

Alternatively, the City argued that even if this were a supervisor harassment case (as opposed to co-worker harassment), respondeat superior liability would nonetheless fail based on the U.S. Supreme Court's distinction between "official" and "unofficial" acts. (DOB 23-24).[3] As explained in the City's Opening Brief, respondeat liability for a supervisor's harassment requires the employee to establish that the supervisor's conduct constitutes an "official" act. (DOB 23-24) The U.S. Supreme Court in *Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004), explained how the official/unofficial dichotomy recognizes that "there are acts of harassment which a supervisor might commit which might be the same acts a co-employee would commit, and there may be some circumstances in which the supervisor's status makes little difference."

---

[3] The City's Opening Brief did not concede that this is a supervisor liability case. The City only offered an alternative argument if the Court finds that this is a supervisor liability case. Turner's Answering Brief offers no reason why this claim should not be analyzed as a co-worker liability case instead of a supervisor liability case.

The "official/unofficial" dichotomy arises from the *Ellerth/Faragher* defense to hostile work environment claims, which the City raised in Paragraph 88 of its Answer. (DOB 23-24)  *See Ellerth v. Burlington Indus.*, 524 U.S. 742 (1998)*; Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). The *Ellerth/Faragher* defense holds that when a supervisor creates the hostile work environment, the employer is only liable if the supervisor's actions constitute a tangible employment action. The "official/unofficial" dichotomy determines whether a tangible employment action exists. Official acts constitute a tangible employment action: unofficial acts do not. The City can only be liable for a supervisor's official acts.

The City argued that Turner's allegations about Lt. Rock (if proven) would constitute unofficial acts. (DOB 24) The City supported this argument with the *Suders* Court's illustrations of the official/unofficial dichotomy. (DOB 24) The *Suders* Court explained that a supervisor's inappropriate sexual comments would be examples of unofficial acts. *Suders*, 542 U.S. at 134.  As unofficial acts, such comments could not establish the employer's respondeat superior liability. In contrast, the *Suders* Court explained that official acts (i.e., tangible employment actions) occur when there is a demotion, reduction in compensation, or any other action in which the supervisor uses his managerial or controlling authority to the employee's disadvantage. *Id.* at 148. Because Turner's allegations consist of Lt. Rock's teasing and profanity, they fall within the unofficial category of the "official/unofficial" dichotomy. As unofficial acts, the City bears no respondeat superior liability. (DOB 24)

In response to this argument, Turner's Answering Brief misstates the distinction between "official" and "unofficial" acts. (PAB 19-20) Turner contends that this distinction turns on whether Lt. Rock's conduct occurred outside the scope of his employment. (PAB 20) Based on this erroneous distinction from Turner's misreading of *Suder*, Turner contends that the City is liable for Lt. Rock's conduct because it occurred within the scope of his employment. (PAB 19-20) That is not the City's respondeat superior argument, nor is that an accurate application of *Suders.* The City does not contend that Lt. Rock's actions were outside the scope of employment. Rather, the City contends that Lt. Rock's actions (as alleged by

-10-

Turner) are no different from the type of conduct that could be inflicted by co-workers. (DOB 24) That is the crux of the official/unofficial dichotomy in *Suders*. Turner's allegations consist of "unofficial" acts that could have been inflicted by a co-worker, and are therefore insufficient to establish the City's respondeat superior liability. Turner's Answering Brief offers no argument as to why his allegations about Lt. Rock are anything but "unofficial" acts. That is yet another reason why Turner's hostile work environment claim fails the fifth prong, which, in turn, defeats his entire Title VII claim.

II.    TURNER'S TITLE VII CLAIM DOES NOT SATISFY THE ELEMENTS OF *MCDONNELL DOUGLAS*, NOR DOES *MCDONNEL DOUGLAS* EVEN APPLY TO HOSTILE WORK ENVIRONMENT CLAIMS

Recognizing that he cannot meet all five elements of a hostile work environment claim, Turner tries to fit his Title VII claim into the *McDonnell Douglas* test.  (PAB 24-25) However, the *McDonnell Douglas* test does not apply to race-based discrimination claims arising from a hostile work environment.  It only applies to racial discrimination claims arising from disparate treatment in the terms and conditions of employment, such as hiring, promoting, transferring or discharging an employee due to race. *See Johnson v. Bally's Atlantic City*, 2005 U.S. App. LEXIS 19313, *4 (3d Cir. 2005).

The Third Circuit confirmed in *Johnson* that the *McDonnell Douglas* analysis is separate and distinct from the five prongs of a hostile work environment.  *Johnson*, 2005 U.S. App. LEXIS 19313, *4.   In *Johnson*, the employee/plaintiff pled a hostile work environment claim in his complaint, but the employer's summary judgment brief addressed the *McDonnell Douglas* test rather than the five elements of a hostile work environment.[4] Turner's Answering Brief commits the same error when citing and applying *McDonnell Douglas* for his hostile work environment claim. (PAB 24-25)

Not only does Turner mistakenly apply *McDonnell Douglas*, but Turner also misstates the elements of *McDonnell Douglas*.  (PAB 24)  Turner lists the following four elements of a prima facie claim under *McDonnell Douglas*: (1) the employee is a member of a protected class, (2) the employee was treated differently than similarly situated persons of different backgrounds, (3) the discrimination resulted in a tangible employment action, and (4) the City did not have a legitimate, non-discriminatory reason for its actions.  (PAB 24)  Contrary to Turner's list of prima facie elements, only the first three of these elements are part of the prima facie case.   If the employee satisfies the first three elements, then the burden shifts to the employer to establish a legitimate, non-discriminatory reason for the employment action that the

---

[4]The City concedes that the *McDonnell Douglas* test applies to retaliation claims arising from Title VII, as explained and applied  more fully in Section III of this Reply Brief.

employee perceives as adverse.  Once the employer articulates that non-discriminatory reasons, the employee must meet the ultimate burdens of (1) disproving the proffered reason and (2) proving that intentional discrimination is the true motive for the employer's actions.  *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

    A.    <u>TURNER'S INABILITY TO SATISFY HIS PRIMA FACIE BURDEN UNDER THE INAPPLICABLE *MCDONNELL DOUGLAS* TEST</u>

Even if the *McDonnell Douglas* test applied to this case (which it does not), Turner has failed to satisfy the elements under that test.  The City concedes that Turner meets the first element of *McDonnell Douglas* because he is a member of the protected class of the African-American race.  However, Turner's claim nonetheless fails to satisfy the remaining two prima facie elements of *McDonnell Douglas*: (1) disparate treatment and (2) tangible employment action.

    1.    <u>TURNER WAS NOT TREATED ANY DIFFERENTLY THAN CAUCASIAN OFFICERS</u>

Turner does not meet the second prong of *McDonnell Douglas* because he was not treated differently than co-workers of other races.  Turner claims he was treated differently because "a racial epithet or its known substitute" was used against him.  (PAB 24)  This claim fails because Turner already admitted under oath that the only time Lt. Rock used the word "nigger" was in a quotation wherein he was relaying a story about a criminal defendant. (DOB 6-7)(A28, 224-225)  In his internal complaint, Turner admitted that this particular racial epithet was not directed to him. (A28)  Therefore, Lt. Rock's singular quotation of this racial epithet cannot satisfy the second prong of *McDonnell Douglas*.

As for any "known substitute" of that racial slur, presumably Turner is referring to the word "blank". Even assuming that Lt. Rock addressed Turner with the word "blank", the record confirms that Lt. Rock also used this word with Caucasians.  (A63, 71, 98)  Corporal John Burns, a Caucasian, explained that Lt. Rock referred to "everyone" as a "blank".  (A71)  The word "blank" does not establish disparate treatment for the second prong of *McDonnell Douglas* because it was directed to African-Americans and Caucasians alike.

-13-

As for whether Lt. Rock teased Turner in the workplace, Turner admitted in his deposition that Lt. Rock teases officers of both races (Turner A227):

> **Q:     . . . Have you ever seen [Lt. Rock] tease any other officers, give a hard time to any other officers?**
> **A:     Yes.**
> **Q.     White or black?**
> **A.     Both.**

In light of this admission, Turner cannot claim that Lt. Rock treated him differently than Caucasian officers. Because Turner's Answering Brief only identifies conduct that was directed to Caucasians and African-Americans alike, Turner fails to satisfy the second element of *McDonnell Douglas*.

## 2.     TURNER'S STRESS IS NOT A TANGIBLE EMPLOYMENT ACTION

As for the third prong of *McDonnell Douglas*, Turner claims that his filing of a stress-related workers' compensation claim is a tangible employment action. (PAB 24)  However, Turner cites no legal authority that recognizes stress as a tangible employment action under *McDonnell Douglas*.  Rather, courts define this prong of *McDonnell Douglas* as "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." *See Cherkaoui v. HSBC Pay Servs.*, 2006 U.S. Dist. LEXIS 9348 (D. Del. 2006).[5]

If Turner claims that work-related stress is a tangible employment action that amounts to a constructive discharge, this court has already rejected such a theory in *Seldomridge v. Uni-marts, Inc.,* 2001 U.S. Dist. LEXIS 9491, *37-38 (D.Del. 2001)(quotation omitted)("[T]he mere fact that the plaintiff feels uncomfortable or considers her working environment unduly stressful is an insufficient basis for a constructive discharge claim.").   In Turner's case, he was not discharged (constructively or otherwise) upon filing his stress claim.  Rather, he was granted disability leave (at his request) and he was paid while on leave.  It was also Turner who requested workers' compensation benefits.  Turner now argues that a tangible

---

[5] This is all the more reason why hostile work environment claims do not fit the elements of *McDonnell Douglas.*

-14-

employment action exists because his employer honored these two requests.  (PAB 24-25) Though the City voluntarily paid Turner's workers' compensation claim, Turner now urges this court to construe that settlement as an admission of Title VII liability. (PAB 24-25)

There are two reasons why the City's settlement of Turner's workers' compensation claim cannot be deemed an admission of Title VII liability.  First, the settlement is inadmissible under Federal Rule of Evidence 408, which provides that settlement of a disputed claim is not admissible to prove liability.  Second, Delaware's workers' compensation laws are no-fault statutes, wherein an employee can collect benefits without proving any fault on the employer's part.  The Delaware Supreme Court in *Hill v. Moskin Stores, Inc.,* 165 A.2d 447, 451 (Del. 1960), has recognized that "the basic philosophy of the [Workers] Compensation acts  [is] designed to eliminate questions of negligence and fault in industrial accidents[.]"  Accordingly, there is no legal basis to construe the settlement of Turner's workers' compensation claim as an admission of Title VII liability for the second prong of *McDonnell Douglas.*

Turner's failure to establish all three prima facie elements of *McDonnell Douglas* is sufficient grounds to dismiss his claim (assuming *arguendo* that *McDonnell Douglas* even applies).  Because Turner cannot meet his prima facie burden under *McDonnell Douglas*, the burden does not shift to the City to articulate a non-discriminatory reason for its actions.

B.     TURNER'S INABILITY TO CARRY HIS ULTIMATE BURDEN OF DISPROVING THE CITY'S NON-DISCRIMINATORY REASON FOR ITS ACTION

Even if Turner could satisfy the prima facie elements of *McDonnell Douglas*, his claim would nonetheless fail because the City has articulated a non-discriminatory reason for its actions.  Turner asserts that the City did not have a legitimate, non-discriminatory reason for allowing Lt. Rock's so-called "hostile treatment" to continue. (PAB 24-25) Contrary to Turner's assertion, the City promptly took remedial action when Turner submitted his internal complaint on January 26, 2004.  (DOB 21-23) Turner admits that he had no further contact with Lt. Rock after he submitted his internal complaint. (A258)  The City's legitimate,

-15-

non-discriminatory reason for not intervening sooner is that Turner never complained to Captain Dietz or the Police Chief prior to January 26, 2004. Once Turner submitted his internal complaint on January 26, the internal affairs division promptly investigated his allegations and ultimately reprimanded Lt. Rock. (DOB 21-23) Prior to January 26, the City could not investigate a complaint that Turner had not yet lodged. An employee's ultimate burden of persuasion under *McDonnell Douglas* requires "some evidence from which a reasonable fact finder could conclude that [the employer's] proffered justifications are not worthy of credence or that the true reason . . . was discrimination." *See Bray v. Marriot Hotels*, 110 F.3d 986, 990 (3d Cir. 1996). Therefore, Turner cannot meet his ultimate burden of persuasion under *McDonnell Douglas* simply by arguing that the City should have investigated his complaint sooner.

III.    TURNER HAS NOT IDENTIFIED ANY ADVERSE EMPLOYMENT ACTION, CAUSAL NEXUS OR PRE-TEXT THAT WOULD ESTABLISH A CLAIM OF RETALIATION

Turner's retaliation claim fails for three reasons. First, the transfer out of F squad is not an adverse employment action. Second, there is no causal link between Turner's protected activity and the transfer out of F squad (which was initiated four days before the protected activity). Third, Turner has not established that the City's non-discriminatory reason for the transfer was a pre-text for discrimination.

A.    LACK OF ADVERSE EMPLOYMENT ACTION

A retaliation plaintiff has the burden of identifying an adverse employment action that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *See Caver v. City of Trenton*, 420 F.3d 243, 255 (3d Cir. 2005). Turner contends that his transfer from F squad to Lt. Battaglia's patrol squad is an adverse employment action. Turner cites *Hampton v. Tinton Falls*, 98 F.3d 017, 115-116 (3d Cir. 1996), which held that transferring a detective to a less desirable patrol assignment can be an adverse employment action. (PAB 26) However, Turner's Answering Brief does not identify what, if anything, is less desirable about his intra-patrol transfer from F squad to Lt. Battaglia's patrol squad. In his deposition and responses to interrogatories, Turner also admitted that he had no problem working in Lt. Battaglia's squad. (A208, 235-236)

Rather than identify anything that is undesirable about Lt. Battaglia's squad, Turner focuses on his personal preference for the F squad. (PAB 25) However, as noted in the City's Opening Brief, "not everything that makes an employee unhappy qualifies as retaliation, for otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *See Poland v. Computer Sciences Corp.,* 2005 U.S. Dist. LEXIS 22618, *18-19 (D. Del. 2005) (DOB 33) Therefore, failure to accommodate Turner's personal preference for the F squad is not an adverse employment action.

-17-

B.    LACK OF ANY CAUSAL LINK

There is no causal link between Turner's transfer out of the F squad and his protected activity of filing his internal complaint.  The transfer was initiated on January 22, 2004, which was four days before Turner submitted his internal complaint on January 26.  (DOB 34) Turner focuses on the fact that Lt. Rock's supervisors (Captain Dietz and then-Inspector Wright) approved the transfer after January 26.  (PAB 26) Based on those dates, Turner argues that the transfer was in response to his internal complaint of January 26.  (PAB 26)  However, Turner cannot avoid the fact that the transfer was initiated by Lt. Rock's memorandum of January 22, which was four days prior to Turner's internal complaint on January 26.  (A28-31, 56) Though Turner avoids addressing the date of the January 22 memorandum, its sequence inevitably rules out the causal link that is necessary for a retaliation claim.

C.    THE TRANSFER WAS NOT A PRE-TEXT FOR DISCRIMINATION

Turner has not established that the transfer out of the F squad was a pre-text for discrimination.  The non-discriminatory reason for the transfer was Turner's sub-standard performance.  This sub-standard performance was illustrated by affidavits from two of Turner's former patrol partners, Curry and Gifford.  (A78-81)  Curry and Gifford separately described different incidents where Turner abandoned them on the job. (A78-81)  These affidavits satisfy the City's burden of production under *McDonnell Douglas*, which merely requires the employer to tender a legitimate, non-discriminatory reason for its employment decision.  "The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff."  *Fuentes,* 32 F.3d at 763.  The employer needs only to produce evidence sufficient to dispel the inference of discrimination raised by the employee.  *See Ferguson v E.I. duPont de Nemours and Company, Inc.*, 560 F. Supp. 1172, 1200 (D. Del. 1983).  "This burden is one of production, not persuasion; it can involve no credibility assessment."  *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142 (2000).

-18-

Though *Reeves* dictates that the employer's burden of production can involve no credibility assessment, Turner nonetheless asks the court to find that at least one of the City's affiants (Gifford) lacks credibility. (PAB 26-27) To attack Gifford's credibility, Turner appends an affidavit of Reginald Harvey, in which Harvey states (without specificity or further elaboration) that Gifford filed false police reports. (PAB 27) Turner does not question Curry's credibility. In either event, *Reeves* clearly holds that courts cannot weigh credibility when ruling on the employer's burden of production. Once the employer proffers a non-discriminatory reason, the ultimate burden of persuasion shifts back to the employee.

Turner's ultimate burden of persuasion requires "evidence from which a reasonable fact finder could conclude either that the defendant's proffered justifications are not worthy of credence or that the true reason for the employer's act was discrimination." *See Bray v. Marriott Hotels*, 110 F.3d 986, 990 (3d Cir. 1996). Turner's Answering Brief merely appends an affidavit in which he denies Curry's and Gifford's allegations. Turner cannot meet his ultimate burden of persuasion by simply denying the City's proffered reason for its employment decision. "This is a more onerous burden of persuasion for a retaliation plaintiff, in that it turns the inquiry 'from the few generalized factors that establish a prima facie case to the specific proofs and rebuttals of discriminatory motivation the parties have introduced.'" *Hicks v. St. Mary's Honor Ctr.*, 509 U.S. 502, 516 (1993). Turner's mere denial falls grossly short of specific proofs and rebuttals for that ultimate burden, and therefore necessitates dismissal of his retaliation claim.

## CONCLUSION

Accepting all factual allegations in a light most favorable to the non-movant, the City is entitled to judgment as a matter of law for Turner's hostile work environment claim (Count I) and retaliation claim (Count IV). Count I should be dismissed because Turner has failed to address all elements of a hostile work environment. Alternatively, Turner's failed attempt to apply *McDonnell Douglas* (which does not even apply to hostile work environment claims) is another ground for dismissing Count I. Count VI should be dismissed because Turner failed to establish two elements of a prima facie claim (an adverse employment action and a causal nexus), and he also failed to carry his ultimate burden of establishing that the City's non-discriminatory justification was a pre-text for discrimination.

/s/ Alex J. Mili, Jr.

Alex J. Mili, Jr., Esquire (I.D. #4125)
Senior Assistant City Solicitor
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175
Attorney for Defendant City of Wilmington

-20-