IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EVERETT D. TURNER,                    :
                                      :
        Plaintiff,                    :        C.A. NO. 05-716 (GMS)
                                      :
        v.                            :
                                      :        JURY TRIAL DEMANDED
CITY OF WILMINGTON,                   :
                                      :
        Defendant.                    :

## MOTION FOR A STAY OF THE TRIAL PENDING PLAINTIFF'S APPEAL TO THE THIRD CIRCUIT COURT OF APPEALS

Plaintiff Turner, by and through his attorneys, respectfully request that this Honorable Court grant Plaintiff's Motion for a Stay of the Trial pending Plaintiff's Appeal to the Third Circuit Court of Appeals and in support thereof, states the following:

1.      On December 22, 2006, Plaintiff Turner filed a Motion for a Continuance of the March 26, 2007 trial date on the grounds that this Court's procedure for selecting a sample jury pool is (1) constitutionally flawed as a violation of both the fair cross-section requirement of the Sixth Amendment; and (2) a violation of the provisions of the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 et seq. requiring all litigants in Federal courts to have a trial by jury selected at random from a fair cross section of the community.

2.      This Honorable Court denied Plaintiff's request for a continuance of the trial date on February 20, 2007, holding that the pretrial conference and trial in this case shall proceed as scheduled on March 7, 2007 and March 26, 2007, respectively, for the reasons state in the Memorandum Order (D.I. 133) issued in another case proceeding in this district, Boyd v. City of Wilmington, Civ. No. 05-178-SLR (D. Del.).

3.      The factors regulating the issuance of a stay are (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other party's interest in the proceeding; and (4) where public interest lies. Hilton v. Braunskill, 481 U.S. 770, 776 (U.S. 1987).

4.      As to the first requirement, Plaintiff has been able to establish that there is a *prima facie* violation of the fair cross section requirement of the Sixth Amendment and the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 et seq. It is undisputed that the nonresponse rate in self-administered surveys for African-Americas is nearly double the rate for White Non-Hispanics. In this Court, the response rate for the Jury Questionnaire form is between only 10% and 12%. (See Ilvento and Martin Affidavits, attached as Exhibits A and B). Thus, the jury selection field is severely narrowed and in the absence of countervailing proof, this enhances the likelihood that the smaller segment is not truly representative of a fair cross-section of the community. Broadway et al. v. Culpepper, 439 F. 3d 1253, 1257 (5th Cir. 1971).

This Court cites U.S. v. Gometz, 730 F. 2d 475 (7th Cir. 1984) for the proposition that the Court is not required to follow up on juror qualification forms that are not complete and returned. However, the facts in Gometz are clearly distinguishable from those in the instant case because in Gometz the rate of return for the jury questionnaire form was 30%. In the instant case, the response rate for this Court's juror questionnaire form is only between 10% and 12% which is, of course, more significant and more likely to increase the chances of a racially biased jury pool which is not representative of the community.  The process in this Court of selecting jurors solely based upon whether the juror responds to the single Jury Questionnaire form creates a bias with minorities, specifically African Americans, being significantly under-represented in the

sample jury pool. Even the Court in <u>Gometz</u> acknowledged that a low rate of response to juror questionnaires could lead to the under-representation of a group entitled to be represented on the qualified jury wheel. <u>Gometz,</u> 730 F. 2d at 478.

Also, in <u>Gometz</u> the Court noted that Gomez failed to provide <u>any</u> evidence that African Americans are over-represented among those who do not return their juror qualification forms and therefore are under-represented on the qualified jury wheel. <u>Gometz,</u> 730 F. 2d at 478. This is not the case in <u>Turner</u>. Plaintiff has provided undisputed evidence that the non-response rates for minorities are substantially greater than the non-response rates for white non-Hispanics. (See Ilvento Affidavit). According to the U.S. Government study of non-response to a single mailing of the 1990 Census of Population, a survey that requires response under penalty of law as does the Jury Questionnaire, non-response rates to the mailed Census survey for blacks was 43.4% which was nearly double the rate for white, non-Hispanics (22%). Thus, Plaintiff, unlike <u>Gometz,</u> has provided ample support for his contention that African-Americans are underrepresented on the qualified jury pool.

5.    As to the second requirement, Plaintiff will undoubtedly be irreparably injured absent a stay in this case. Should a stay not be granted, Plaintiff, an African American male, will not receive a fair trial based upon the current method of jury selection resulting in an under-representation of African Americans in the jury venire. Plaintiff requests a stay so that he may exercise his constitutional right to have his case heard before a jury that is drawn from a source that is fairly representative of the community. It is contrary to judicial economy to allow this matter to proceed to trial without addressing the constitutionally defective jury selection process.

6.    As to the third requirement, the issuance of a stay in this matter will not substantially injure the Defendant's interest in this proceeding because there is no indication that a delay in the trial date will have any adverse effect on the Defendant.

7.    As to the fourth requirement for a stay, the question of whether the jury selection process for this Court affords African American litigants the opportunity and the constitutional right to have a jury selected at random from a fair cross section of the community is a matter of serious public interest and concern.

8.    Concurrently, with this Motion to Stay the Order denying a continuance, Plaintiff files an appeal of this Court's Order under the collateral order doctrine established in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949). The requirements of this doctrine are that the Order must (1) conclusively determine a disputed question; (2) resolve an important issue separate from the merits of the action, and (3) be effectively unreviewable on an appeal from the final judgment. Id.

9.    First, the disputed question is "conclusively determined" if the district court has clearly said its last word on the subject. Brytus v. Spang & Co., 11 F.3d 112, 115 (3d Cir. 1998); see generally, 19 James Wm. Moore et al., Moore's Federal Practice § 202.07[1] (2006). In the present case, this element has been met with the Court's final determination that Plaintiff's challenge to the jury selection plan is without merit.

10.    Second, the requirement that the Order resolve an important issue separate from the merits of the action has been interpreted to mean that the Order must present a serious and unsettled question of law, and must involve an important right which would be lost, probably irreparably if review had to await final judgment. 19-202 Moore's Federal Practice §202.07[1]. In the instant case, this element is met because this Court's order attempts to resolve the issue of

whether this Court's process of selection jurors is constitutionally flawed which is separate and apart from the issue of whether Plaintiff was discriminated against based on his race by the City of Wilmington.[1]    As such, the jury-selection procedures are "uniquely separable" from Defendant's alleged discriminatory promotional practices.

11.    In the third and final prong, "an order must be effectively unreviewable, meaning that 'review postponed will, in effect, be review denied." In re Diet Drugs Prods. Liab. Litig., 418 F. 3d 372, 377 (3d Cir. 2005) (quoting Zosky v. Boyer, 856 F. 2d 554, 561 (3d Cir. 1988)). This element is met because, inter alia, a refusal by the Circuit Court to hear this appeal would mean that this case would move forward in the District Court, and an adverse verdict in the civil trial because African Americans, a distinctive group in the community, is excluded from the jury selection process would be difficult-if not impossible-to unwind.

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff's Motion to Stay the Trial pending Plaintiff's appeal to the Third Circuit Court of Appeals on the issue of whether this Court's procedure for selecting a sample jury pool is constitutionally flawed and fails to comply with the Jury Selection and Service Act of 1968.

---

[1] The instant case can be contrasted with other Third Circuit cases that have refused to apply the doctrine because of this element. Compare Pressman-Gutman Co. v. First Union Nat'l Bank (In re Pressman-Gutman Co.), 459 F. 3d 383, 396 (3d Cir. 2006) (refusing to apply the collateral order doctrine because the issues involved the court's order appointing a guardian ad litem for an ERISA plan are "enmeshed" with the factual and legal issues as to whether the plan administrators breached their fiduciary duties) with White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445, 452 (holding that an award of attorney's fees "is uniquely separable from the cause of action to be proven at trial").

MARGOLIS EDELSTEIN

Jeffrey K. Martin, Esquire (DE #2407)
1509 Gilpin Avenue
Wilmington, Delaware 19806
Attorneys for Plaintiff, John Miller

Dated: February 22, 2007